**Margaret E. LUNDGREN, as Personal Representative of the Estate of Richard F. Lundgren, Deceased, Plaintiff-Appellee,**

v.

**John P. McDANIEL, Duane Davis, and Ricky Cloud, as Sheriff and Deputy Sheriffs of Jackson County, Florida, respectively, Defendants-Appellants.**

Nos. 86–3364, 86–3442.

United States Court of Appeals, Eleventh Circuit.

April 13, 1987.

Julius F. Parker, Jr., Haben, Parker, Skelding, Costigan, McVoy & Labasky, Tallahassee, Fla., for defendants-appellants.

Lynn C. Higby, Bryant, Higby & Williams, Panama City, Fla., for plaintiff-appellee.

Before RONEY, Chief Judge, KRAVITCH and EDMONDSON, Circuit Judges.

EDMONDSON, Circuit Judge:

This appeal arises from the death of a store proprietor who was shot by a deputy sheriff when two deputies investigated what they believed to be a burglary of the store. The decedent's wife, Margaret Lundgren, suing on behalf of herself and the decedent's children, brought a lawsuit against the two deputies, Duane Davis and Ricky Cloud, as well as the sheriff, John McDaniel. After a jury trial, the district court entered judgment in favor of plaintiff. The court held Deputies Davis and Cloud liable for $16,565.13 under 42 U.S.C. sec. 1983, and Sheriff McDaniel liable for $198,750.00 under a pendent state law claim for wrongful death. In addition, the

court awarded attorney's fees in the amount of $34,606.50 against defendants, allocating 8% of these against the two deputies, and 92% of these against the sheriff. We affirm the judgment of the district court.

FACTS:

On July 10, 1983, a front window of the Marianna Video Store was broken. Owner Richard Lundgren cleared the broken glass and replaced it with a sheet of plywood. That night, Richard and his wife, Margaret, slept in the store behind a desk.

At around 2:00 a.m. on July 11, 1983, deputy sheriffs Davis and Cloud noticed the broken window, and suspected that a burglary was in progress. They entered the store without announcing themselves. The store was only faintly illuminated by a television.

What happened next is sharply disputed by the parties. At trial, deputy Davis testified that he saw a large shadow or silhouette rise up from behind a desk, saw a flash of light from a gun, and felt a blast of hot air on his forehead. After being shot at, Davis testified, he fired three times in return. When the shooting stopped, Davis went around the desk, shining his flashlight. He saw Richard lying with blood trickling from his head and saw a gun on the floor. Davis testified that Margaret then reached for this gun and that he told her not to touch it. Although Davis testified at trial that Margaret Lundgren fired the initial shot, in a prior statement to an investigator, Davis indicated that Richard Lundgren fired the first shot.

Deputy Cloud testified at trial that he saw a man stand up from behind the desk with a pistol in both hands. Fearing that he would be shot, Cloud closed his eyes or turned his head away and wheeled backwards. As Cloud was wheeling backwards, he heard the first shot. The shot sounded to Cloud like it came from behind the desk. According to Cloud, he then fired repeatedly in return. At trial, Cloud testified that, although the first shot came from behind the desk, he did not know whether Richard or Margaret fired it. In a previous statement given to an investigator, however,

Cloud stated that Richard fired first with a gun that was found in the video store.

On direct examination at trial, Margaret Lundgren testified that she woke up her husband when she heard someone walking on the broken glass outside the store. Margaret testified that as her husband Richard "was raising up someone started shooting and [Richard] was shot." According to Margaret's testimony on direct examination, Richard did not get "all the way above the desk" before he was shot; Richard never fired a shot; and she never fired a shot. Also, Margaret denied having later reached for a gun.

On cross examination, Margaret testified that she never saw Richard reach for a gun. When confronted by her prior deposition statement that "I recall him reaching for his gun," Margaret retracted, saying that she did not know whether Richard reached for a gun and that Richard could have fired a shot. Margaret also testified that Richard "never really had a chance to get up off the floor."

Forensic examination revealed that Richard Lundgren had been struck by one bullet in the right temple and that this bullet had first passed through the desk. Investigators found no physical evidence suggesting that Richard or Margaret had fired a shot. The pistol found in the store had lint in the barrel. No ejected shell casings were found. No gunshot residues were found on Richard's hands.

VIOLATION OF FOURTH AMENDMENT

On appeal, appellants argue that the officers' conduct in returning fire was justified and violated no constitutional right. According to appellants, the officers had probable cause to believe that the decedent or plaintiff posed a threat of serious physical harm to themselves or others. Appellants contend that it is uncontroverted that either the decedent or plaintiff rose up from behind the desk with a pistol, apparently intent on using it on the deputies.

If the facts were as appellants claim, then the deputies' conduct would violate no constitutional rights. The Supreme Court has indicated that "if the suspect threatens

the officer with a weapon ... deadly force may be used...." *Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985). But appellants ignore the factual disputes in this case and mischaracterize the record. Whether plaintiff or the decedent stood up behind the desk, threatened the officers with a weapon, or fired a shot, were and are sharply contested by the parties.

■ The jury could have reasonably believed that the officers were neither threatened by a weapon, nor appeared to be threatened by a weapon, nor were fired upon, but rather that the officers without provocation shot at a nondangerous suspect. Indeed, this is apparently what the jury did conclude, since it answered "yes" to special interrogatory questions regarding whether the deputies violated one or more of plaintiff's or decedent's constitutional rights. Under the version of facts apparently believed by the jury, defendants violated the fourth amendment right to be free from unreasonable seizure when firing at Richard Lundgren. *See generally Tennessee v. Garner,* 471 U.S. 1, 10–11, 105 S.Ct. 1694, 1700–01, 85 L.Ed.2d 1 (1985); *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1501–02 (11th Cir.1985) (en banc), *cert. denied,* —— U.S. ——, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986).

## QUALIFIED IMMUNITY

Appellants argue that even if their conduct was unconstitutional, they are entitled to qualified immunity on the section 1983 claim because their conduct did not violate a clearly established constitutional right at the time. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Appellants point out that a Florida statute permits an officer to use deadly force to stop a fleeing felon. Fla.Stat.Ann. sec. 776.05 (West 1976 Supp.1986). At the time of the shooting incident in 1983, no Florida court had held this statute unconstitutional. Not until two years later, in 1985, did the Supreme Court hold that the

use of force to stop a fleeing felon is unconstitutional unless the officer has probable cause to believe the suspect poses a significant threat of death or physical injury to officer or others. *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

If Richard or Margaret had attempted to flee, then defendants might be entitled to qualified immunity. *Cf. Brown v. City of Clewiston,* 644 F.Supp. 1417, 1420–22 (S.D. Fla.1986) (Florida policeman who shot a fleeing felon in 1979 did not violate a clearly established constitutional right at the time, and is entitled to qualified immunity); *Acoff v. Abston,* 762 F.2d 1543, 1549–50 (11th Cir.1985) (remanding for determination of whether Alabama police who shot a fleeing felon in 1981 violated a clearly established constitutional right). We do not reach this issue, however, because there is no evidence in the record suggesting that Richard or Margaret were fleeing or that the deputies believed them to be fleeing.

■ We hold that shooting a suspected felon who was apparently neither fleeing nor threatening the officers or others [1] was—even in July, 1983—an unreasonable seizure and clearly violated fourth amendment law.

## ELEVENTH AMENDMENT

■ Appellants also argue that the deputies were sued in their official capacities, that Florida has not waived its eleventh amendment immunity to suit in federal courts, and that, therefore, the eleventh amendment precludes the judgment against the deputies on the section 1983 claim. We conclude, however, that the deputies were sued solely in their individual capacities. The eleventh amendment does not bar an award of damages against a defendant in his personal capacity. *Gamble v. Florida Department of Health & Rehabilitative Services,* 779 F.2d 1509, 1512 (11th Cir.1986).

---

1. As noted earlier, the jury apparently concluded that the officers shot Richard without provocation and that neither Richard nor Margaret fired at them or threatened them with a weapon.

In the present case, the amended complaint does not unequivocally state whether defendants are being sued officially or personally. The preamble to the amended complaint merely recites that plaintiff is suing "the defendants, John P. McDaniel, Duane Davis, and Ricky Cloud, as Sheriff and Deputy Sheriffs of Jackson County, respectively." The Supreme Court has observed that "[i]n many cases, the complaint will not clearly specify whether officials are being sued personally, in their official capacities, or both. 'The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985) (quoting *Brandon v. Holt*, 469 U.S. 464, 469, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985)).

■ The judgment rendered in this case provides no guidance: the indicia of capacity which can be gleaned from the judgment are weak and contradictory. The text of the judgment by the district court on the section 1983 claim provides that plaintiff shall "recover of the defendants Duane Davis and Ricky Cloud the sum of $16,-565.13." This text indicates that damages are being awarded against Davis and Cloud personally. The caption of the judgment suggests an award against persons in their official capacity: it lists the defendants as "John P. McDaniel, Duane Davis and Ricky Cloud, as Sheriff and Deputy Sheriffs of Jackson County, Florida, respectively." But, this caption (the same as that on the complaint) is—in and of itself—of little significance.[2]

The raising, litigation, and submission to the jury of the qualified immunity defense as a defense that would preclude liability on the section 1983 claim demonstrates, however, that the section 1983 claim was actually tried as a claim against the deputies solely in their individual capacities. Defendants raised the "good faith" or qualified immunity defense in their answer, their motion for summary judgment, their proposed jury instructions, and their appeal. In the pretrial stipulation, both parties agreed that whether defendants acted in good faith and were entitled to qualified immunity was an issue for trial. Most importantly, the district court instructed the jury that it could not hold the deputies liable on the section 1983 claim if the deputies had acted with objective good faith and were thus entitled to qualified immunity.

■ Qualified immunity—the objective "good faith" defense—is available only in a personal capacity lawsuit, not in an official capacity action. *Graham*, 105 S.Ct. at 3106. Thus, the award of damages on the section 1983 count was against the deputies solely in their individual capacities and is not barred by the eleventh amendment.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS OF FLORIDA STATUTE

Appellants argue that plaintiff failed to comply with the notice requirements of Fla. Stat.Ann. sec 768.28(6) when prosecuting her pendent wrongful death claim against Sheriff McDaniel. Section 768.28(6) provides in pertinent part that:

An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency and also ... presents such claim to the Department of Insurance, within 3 years after such claim accrues and the Department of Insurance or appropriate agency denies the claim in writing.... The failure of the Department of Insurance or the appro-

---

**2.** Courts have considered the caption of a complaint when analyzing whether a lawsuit is against a defendant personally or in his official capacity, but have not treated the caption as determinative of the capacity in which a defendant is sued. *See Brandon v. Holt*, 469 U.S. 464, 469 n. 11, 105 S.Ct. 873, 875 n. 11, 83 L.Ed.2d 878 (1985); *California v. Harvier*, 700 F.2d 1217, 1218, (9th Cir.), *cert. denied*, 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983); *Williams v.*

*Thomas*, 692 F.2d 1032, 1040 n. 8 (5th Cir.1982) (dictum), *cert. denied sub nom. Dallas County v. Williams*, 462 U.S. 1133, 103 S.Ct. 3115, 77 L.Ed.2d 1369 (1983). This approach is consistent with the general rule that, although captions provide helpful guidance to the court, they are not determinative as to the parties to the action or the court's jurisdiction. *See* 5 C. Wright & A. Miller, Federal Practice & Procedure sec. 1321, pp. 458–59 (1969).

priate agency to make final disposition of the claim within 6 months after it is filed shall be deemed a final denial of the claim for purposes of this section. . . .

■ This section does not apply to claims against defendant police officers in their individual capacities. *Hucker v. City of Oakland Park,* 427 So.2d 244 (Fla.Dist.Ct. App.1983). All parties litigated the pendent claim against Sheriff McDaniel in his official capacity. Appellants raised as a defense failure to comply with the notice requirements of section 768.28(6), and appellees argue that they have complied with section 768.28(6).[3] We conclude that Sheriff McDaniel was sued solely in his official capacity on the pendent claim for wrongful death.[4]

In the present case, plaintiff notified both the Jackson County Sheriff's Office and the Florida Department of Insurance of her claim against Sheriff McDaniel but did not wait a full six months after such notification before filing the original complaint on October 25, 1983. Defendants filed a motion to dismiss on the grounds that plaintiff failed to comply with the notice requirements. On May 7, 1984, plaintiff filed an amended complaint alleging that she had given notice to both the sheriff and the Department of Insurance. On the same day, the district court denied defendants' motion to dismiss, reasoning that because more than six months had elapsed from the date of notification, defendants' argument was moot.

Appellants contend that, under Florida law, the federal district court should have dismissed without prejudice the original complaint because it was filed prior to the expiration of the six month period after notification. Under Florida law, appellants argue, the federal district court erred by permitting the plaintiff simply to wait six months after notification and then to file an amended complaint.

When making the above argument, appellants assume that Florida law governs this question. We therefore must analyze whether the district court was required to apply Florida law to this issue when ruling on the pendent state claim for wrongful death against Sheriff McDaniel. In *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938), the Supreme Court held that federal courts should apply state rules of decision in diversity cases. The Supreme Court has indicated that the Erie doctrine also applies to pendent state claims litigated in federal courts. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1141, 16 L.Ed.2d 218 (1966) (dictum).

Not all state laws, however, are "rules of decision" which must be applied under the Erie doctrine. In general, only substantive state law must be applied; federal law governs matters of procedure. *See, e.g., National Distillers & Chemical Corp. v. Brad's Machine Products, Inc.,* 666 F.2d 492, 494–95 (11th Cir.1982). The distinction between substance and procedure has proved highly elusive, and the Supreme Court and lower courts have struggled for years with the question of precisely which

---

**3.** The judgment rendered by the district court provides no guidance with respect to the capacity in which Sheriff McDaniel was sued in the pendent state claim for wrongful death, just as it provides no guidance with respect to the capacity in which the deputies were sued in the section 1983 claim. Again, we look to the manner in which the parties litigated the pendent wrongful death claim to determine the capacity in which the defendant was sued.

**4.** Appellants conceded at oral argument that the eleventh amendment does not bar a recovery against Sheriff McDaniel on the pendent claim. This concession appears correct, because the eleventh amendment does not preclude an award of damages against a county. *Mt. Healthy School District v. Doyle,* 429 U.S. 274,

281–82, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977). The Florida Constitution indicates that a sheriff is a county officer. Fla. Const., Art. VIII, Sec. 1(d). Furthermore, there is no contention, and no facts in the record to support such a contention, if made, that a judgment against the Jackson County Sheriff's Office must under all circumstances be paid from state treasury rather than from county funds. *See Travelers Indemnity Co. v. School Board of Dade County,* 666 F.2d 505, 509 (11th Cir.), *cert. denied,* 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982). Similarly, even if the judgment against the deputy sheriffs had been against them in their official capacities, the eleventh amendment seemingly would be no bar to that judgment.

state rules must be applied under the Erie doctrine.

In *Guaranty Trust Co. v. York,* 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945), the Supreme Court adopted an out-come-determinative test: federal courts sitting in diversity should resolve questions so that "the outcome of the litigation in federal court [would] be substantially the same, so far as legal rules determine the outcome of litigation, as it would be if tried in a State court." Nine years later, however, the Court retreated from the out-come-determinative test, holding that a decision as to which rule to apply required a balancing of the federal interest in uniform process and the state interest in uniformity of results. *Byrd v. Blue Ridge Rural Electric Coop.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1956).

More recently, in a case involving primarily the status of the Federal Rules of Procedure under the Erie doctrine, the Supreme Court also discussed "the typical, relatively unguided Erie choice." *Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965). The *Hanna* court noted that "*every* procedural variation" was, in some sense, "outcome-determinative." *Id.,* 380 U.S. at 469, 85 S.Ct. at 1142 (emphasis in original). Therefore, the *Hanna* court held, "the 'outcome-determinative' test cannot be read without reference to the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id.*

The Florida statutory requirement of notice and expiration of a six month waiting period, Fla.Stat. sec. 768.28(6), may well be substantive for purposes of the Erie doctrine to the extent that it would require a federal district court, upon motion by defendant, to enter a protective order suspending discovery until the end of the six month period and would bar the entry of a judgment until the six months had passed. We need not decide these issues, however, because the defendants did not move for a protective order and no such judgment was issued. The district court simply waited until the six month period after notification

had expired, and then permitted plaintiff to file an amended complaint, and denied as moot defendant's motion to dismiss.

■ We doubt that Florida law prohibits, as appellants contend, a trial court from waiting until the expiration of the six-month period after notification, and then permitting a plaintiff to file an amended complaint. *See Askew v. County of Volusia,* 450 So.2d 233 (Fla.Dist.Ct.App.1984) (en banc). But even if Florida law requires, without exception, a trial court to dismiss a complaint filed less than six months after notice, such a Florida rule would be procedural for purposes of the Erie doctrine. A Florida court dismissal would not bar refiling of the complaint; thus, allowing an amendment in federal court, as in this case, would not result in forum shopping or in the inequitable administration of justice. Moreover, there is a strong federal interest in allowing federal district courts to exercise control over whether and when to permit amended complaints.

■ Therefore, federal law, not Florida law, governs the procedural question of whether to wait six months and then permit filing of an amended complaint or to dismiss the original complaint. A district court has discretion whether to permit an amended complaint, *Henson v. Columbus Bank & Trust Co.,* 770 F.2d 1566, 1574 (11th Cir.1985); and the district court's decision to permit such amendment after six months in this case was not an abuse of discretion.

Appellants argue in the alternative that the pendent claim should have been dismissed with prejudice because plaintiff failed to prove, during her case in chief, compliance with the notice requirements of section 768.28(6). After both parties had rested, defendants moved for a directed verdict on the grounds that plaintiff had failed to prove notice. At this late stage of the trial, the district court permitted the plaintiff to reopen the evidence. Defendant then conceded that notice had been given to the sheriff's office, and plaintiff introduced into evidence a letter establish-

ing that notice had been given to the Florida Department of Insurance.

Appellants cite a Florida decision, *Hardcastle v. Mohr,* 483 So.2d 874 (Fla.Dist.Ct. App.1986) for the proposition that, where plaintiff fails to prove notice in the plaintiff's case in chief, it is too late for the plaintiff to remedy this omission in his proof, and the claim must be dismissed with prejudice. We believe that *Hardcastle* is distinguishable. In any event, however, appellants' citation of Florida law is again unavailing, because federal law governs this procedural question.

As a matter of federal law, the trial court has discretion whether to reopen the evidence after both parties have rested. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 332, 91 S.Ct. 795, 803, 28 L.Ed.2d 77 (1971); *see also,* 6A Moore's Federal Practice par. 59.04[13]. We find that the district court's decision to reopen the evidence late in the trial was not an abuse of discretion.

Accordingly, the judgment of the district court is AFFIRMED.