Mary **BRADDOCK**, as Personal Representative of the Estate of Robert Braddock, deceased, and Mary Braddock, individually, Plaintiff,

v.

**ORLANDO REGIONAL HEALTH CARE SYSTEM, INC.,** Jeffrey Backer, M.D., and Son L. Chau, M.D., Defendants.

No. 94–1052–Civ–ORL–18.

United States District Court,
M.D. Florida,
Orlando Division.

April 4, 1995.

Roger E. Craig, Craig, Ryan, Mast & King, Naples, FL, Geoffrey N. Fieger, Dean W. Amburn, Fieger, Fieger & Schwartz, P.C., Southfield, MI, for plaintiff Mary Braddock, as Personal Representative of the Estate of Robert Braddock, deceased and individually.

Richard L. Allen, Jr., Mateer, Harbert & Bates, P.A., Orlando, FL, for defendants Orlando Regional Health Care System, Inc., a Florida non-profit organization, dba Sandlake Hosp., Jeffrey Backer, M.D., jointly and severally.

Susan Tillotson Mills, Holland & Knight, Tampa, FL, H. David Luff, Sanders, McEwan, Martinez, Luff & Dukes, P.A., Orlando, FL, Linda M. Galbraith, Feikens, Vander Male, Stevens, Bellamy & Gilchrist, Detroit, MI, for defendant Son L. Chau, M.D., jointly and severally.

## ORDER

G. KENDALL SHARP, District Judge.

This case is before the court on Defendants' motions to dismiss (Docs. 42, 45). Defendants claim that Plaintiff Mary Braddock (Braddock) failed to comply with certain Florida statutes in filing her medical malpractice action against them. Braddock originally filed this action in Michigan, and agrees that she did not comply with Florida's statutes that might govern her claim. Braddock has asserted that the presuit procedural requirements governing medical malpractice actions in Florida courts should not apply in this action, before a federal court sitting in diversity. Because the court concludes that these presuit procedures should not apply in federal court actions, the court denies Defendants' motions to dismiss the action.

## I. Facts

For purposes of a motion to dismiss, the court must view the allegations made in the complaint in the light most favorable to the plaintiff and assume the allegations in the complaint are true. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir.1983). Accordingly, the court assumes the following events occurred. In February 1991, Robert Braddock (Mr. Braddock) underwent a total right hip replacement in his home state of Michigan. In July 1991, Mr. Braddock began suffering from an infection in his hip, which was treated successfully with antibiotics and a subsequent operation. In February 1992, Mr. Braddock traveled to Florida, where he again suffered from hip pain. On February 27, Mr. Braddock went to the emergency room at Sandlake Hospital in Orlando, where he allegedly provided a full history of his hip replacement and infection. Dr. Jeffrey Backer ordered X-rays of Mr. Braddock's left hip and pelvis, prescribed pain pills and crutches, and injected cortisone before releasing him.

The Braddocks returned to the emergency room the next day, as Mr. Braddock was having difficulty breathing and exhibiting signs of delirium. Mr. Braddock and his wife again provided a full medical history, but Dr. Son L. Chau diagnosed pulmonary embolism hypoxemia, instead of correctly identifying septic shock. On February 29, Dr. Chau removed Mr. Braddock's gall bladder in an attempt to cure his ailment, but then discovered that Mr. Braddock's hip was the source of an infection. On March 1, Dr. Chau operated on Mr. Braddock's hip. After a month-long course of treatment, including dialysis and the removal of his hip prosthesis, Mr. Braddock died on March 26, 1992, of multiple organ failure due to septic shock from his infected hip.

Mary Braddock, as personal representative of her husband and individually, filed suit in Wayne County circuit court in Michigan on

March 25, 1994, alleging medical malpractice. Braddock fulfilled all of the presuit requirements for medical malpractice actions under Michigan law. Defendants, all Florida residents, removed the action to a federal district court in the Eastern District of Michigan. Defendants subsequently filed motions to dismiss for lack of personal jurisdiction. Before the court ruled on those motions, however, Braddock moved for a change of venue under 28 U.S.C. § 1406(a). The court in Michigan granted Braddock's motion, and the case was transferred here after the court concluded that the Michigan court was an improper forum to adjudicate the dispute (Doc. 23). The court noted that the Michigan forum was improper because it was clear that no Michigan court would have personal jurisdiction over the Defendants. After the case was transferred to Florida, this court dismissed as moot Defendants' motions to dismiss for lack of personal jurisdiction. Defendants have now filed a motion to dismiss the action, because Braddock failed to complete the presuit requirements for medical malpractice actions in Florida.

Defendants have asserted that Braddock did not comply with two Florida statutes. The first of these, Fla.Stat. ch. 766.106(2) (1993), provides, "After completion of presuit investigation ... and prior to filing a claim for medical malpractice, a claimant shall notify each prospective defendant ... of intent to initiate litigation for medical malpractice." Section (3)(a) of chapter 766.106 declares that "no suit may be filed for a period of 90 days after notice is mailed to any prospective defendant." Fla.Stat. ch. 766.106(3)(a) (1993). Also, chapter 766.203 provides that each prospective medical malpractice plaintiff must make adequate inquiry to ascertain that there are reasonable grounds to believe that defendants were negligent and that the negligence caused the injury. Plaintiff must provide a corroborating affidavit from a medical expert at the time plaintiff serves notice of intent to sue on his defendants. Fla.Stat. ch. 766.203(2) (1993). Braddock admits that she did not comply with these laws in filing this case.

## II. Legal Discussion

■ Defendants' motions require the court to confront the conflict between federal and state law, and determine whether Florida's medical malpractice provisions must be enforced by a federal court sitting in diversity. Federal courts sitting in diversity must apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Brown v. Nichols*, 8 F.3d 770 (11th Cir.1993). As the Supreme Court has subsequently recognized, however, federal courts also must adhere to the Federal Rules of Civil Procedure even when sitting in diversity actions. *See, e.g., Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). There is an apparent conflict between Florida's presuit requirements and the liberal pleading and notice provisions of the federal rules. The court's task, then, is to determine whether the state law provisions are binding in federal court because they are substantive in nature, or whether the federal procedural rules should be in effect.

In support of their motion Defendants have relied exclusively on rulings by Florida's courts that state that the relevant medical malpractice provisions are substantive in nature. For example, the Florida Supreme Court has noted that the Florida Legislature enacted chapter 766.106 in order "to address a legitimate legislative policy decision relating to medical malpractice and established a process intended to promote the settlement of meritorious claims at an early stage without the necessity of a full adversarial proceeding.... We find that the statute is primarily substantive in nature...." *Williams v. Campagnulo*, 588 So.2d 982, 983 (1991). In Florida courts, Defendants note, adherence to the special notice and pleading provisions is necessary to maintain a medical malpractice action. *See Patry v. Capps*, 633 So.2d 9 (Fla.1994); *Weinstock v. Groth*, 629 So.2d 835 (Fla.1993).

■ As the Supreme Court has observed, however, "[t]he line between 'substance' and 'procedure' shifts as the legal context changes. 'Each implies different variables depending upon the particular problem for which it is used.'" *Hanna v.*

*Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965) (quoting *Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)). In this case, the court must make a determination of the substance of the malpractice provisions in light of the *Erie* doctrine, a question for the federal courts and fraught with constitutional implications. State court decisions are not binding on federal courts unless the decision of the highest state court matches the precise issue before the court. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *see also Al–Site Corp. v. VSI Int'l, Inc.,* 842 F.Supp. 507, 509 (S.D.Fla. 1993). Federal courts are the final arbiters of federal law, and while state court decisions as to the substance of the medical malpractice provisions may be persuasive, the decisions must be construed in light of the fact that the courts were not evaluating the statutes under *Erie* and its progeny. See *Al–Site,* 842 F.Supp. at 509–10.

Beginning with *Hanna v. Plumer,* the Supreme Court announced a bifurcated test to evaluate state statutes under the *Erie* doctrine. First, "If Congress intended to reach the issue before the district court, and if it enacted its intention into law in a manner that abides with the Constitution, that is the end of the matter; '[f]ederal courts are bound to apply rules enacted by Congress with respect to matters ... over which it has legislative power.'" *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 27, 108 S.Ct. 2239, 2242, 101 L.Ed.2d 22 (1988) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 406, 87 S.Ct. 1801, 1807, 18 L.Ed.2d 1270 (1967)). The matter is very different, however, if there is no federal rule or statute directly on point and the court must make "the typical, relatively unguided *Erie* choice." *Hanna,* 380 U.S. at 471, 85 S.Ct. at 1144. In that situation, the conflict between state and federal law must be viewed in light of "the twin aims of the *Erie* rule; discouragement of forum shopping and avoidance of inequitable administration of the laws." *Id.* at 468, 85 S.Ct. at 1142; *see also* Charles Alan Wright, Federal Courts 404–05 (5th ed. 1994). "If applying the relevant judge-made law would denigrate these policies, the district court should apply state law." *Alexander Proudfoot Co. World Headquarters L.P. v. Thayer,* 877 F.2d 912, 916 (11th Cir.1989) (citing *Walker v. Armco Steel Corp.,* 446 U.S. 740, 752–53, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1980)). In summary, federal courts should "apply the federal rules of civil procedure to the exclusion of any contrary state procedure as long as the rule is both constitutional and within the scope of the rules' enabling act." *Ferrero v. Associated Materials Inc.,* 923 F.2d 1441, 1448 (11th Cir.1991) (citing *Hanna* ). If, however, there is no federal rule directly on point, the court should consider the twin aims of *Erie* in deciding which law to apply.

In *Woods v. Holy Cross Hosp.,* 591 F.2d 1164 (5th Cir.1979), the Fifth Circuit required the application of a Florida medical malpractice statute that required plaintiffs to present their case before mediation panels before litigating in court. Under the Florida law, the panel findings were admissible as evidence at the subsequent trial, as well as any defendant's refusal to participate in the panel hearing. Labeling this provision requiring mediation an "integral" part of Florida's malpractice statute, the Fifth Circuit held that the law would be inequitably administered if federal courts sitting in diversity declined to follow it. *Id.* at 1168. "We would do grave damage to the. legislative response evidenced by Florida's Medical Malpractice Law. if we refused to apply the mediation requirement in diversity cases." *Id.* at 1168–69. This holding is in accord with other circuits' holdings confronting statutory schemes that refer claims to a specialized panel before parties may proceed to court. *See, e.g., Daigle v. Maine Medical Ctr.,* 14 F.3d 684 (1st Cir.1994) (requiring federal courts to allow evidence of panel's findings without impeachment at trial, when litigants are required to present cases before a panel); *Stoner v. Presbyterian Univ. Hosp.,* 609 F.2d 109 (3d Cir.1979) (requiring diversity plaintiffs to adhere to Pennsylvania's requirement of arbitration of their claims before presenting them in court).

■ However, where states have created specialized hurdles for filing particular causes of action, as Florida has with regard to medical malpractice suits, the Eleventh

Circuit has consistently favored the federal rules. *See Brown v. Nichols,* 8 F.3d 770, 773 (11th Cir.1993) ("We have ... observed that, in diversity actions, ... federal law governs pleading requirements."). In *Lundgren v. McDaniel,* 814 F.2d 600 (11th Cir.1987), the court applied federal law when the court deemed "procedural" a Florida provision requiring plaintiffs to wait six months after filing notice to defendants to file a complaint. Similarly, the notice provision in Fla.Stat. ch. 766.106 (1993), which requires 90 days' advance notice, directly conflicts with Federal Rules of Civil Procedure 3 and 4. Rule 3 provides that "[a] civil action is commenced by filing a complaint with the court." Rule 4 establishes that service of process upon the filing of an action provides adequate notice under the federal rules. As a result of this conflict, the heightened notice requirement followed by a waiting period before formally filing suit should not be considered part of the substantive law of a state, to be applied in federal court. *See Lundgren,* 814 F.2d at 606 ("[E]ven if Florida law requires, without exception, a trial court to dismiss a complaint filed less than six months after notice, such a Florida rule would be procedural for purposes of the *Erie* doctrine.").

The heightened pleading requirement in Fla.Stat. ch. 766.203 (1993), requiring an affidavit from a medical expert as part of a plaintiff's complaint, directly conflicts with Fed.R.Civ.P. 8(a), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." In *Caster v. Hennessey,* 781 F.2d 1569 (11th Cir.1986), the Eleventh Circuit overruled a district court that required a defamation plaintiff to follow Florida law and plead publication with specificity. The court held, "While Florida requires, perhaps wisely, specific allegations of publication in the complaint, under *Hanna* a federal court need not adhere to a state's strict pleading requirements but should instead follow Fed.R.Civ.P. 8(a)." *Id.* at 1570 (citations omitted). The heightened pleading requirement for medical malpractice cases should be treated in the same fashion, and therefore this court must apply federal procedural rules.

Because there is a direct conflict between the requirements of Florida's medical malpractice statute and the Federal Rules of Civil Procedure, and those federal rules have been implemented in a constitutional manner, the court does not proceed with evaluating the Florida provisions under the second *Hanna* test. Even while sitting in diversity federal courts must abide by the procedural rules established by Congress. Fla.Stat. ch. 766.106 and ch. 766.203 directly conflict with Fed.R.Civ.P. 3, 4 and 8(a), and in this situation the court must apply the federal rules.

### III. Conclusion

The court concludes that the Florida provisions with which Braddock has failed to comply should not be applied by a federal court sitting in diversity. Accordingly, the court **DENIES** Defendants' motions to dismiss (Docs. 43, 45).

It is **SO ORDERED.**