Juan PABLO HERNANDEZ, Plaintiff

v.

CITY OF MIAMI, a Florida municipal
corporation, and Ricardo Perez,
Defendants

No. 99–1204–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Feb. 13, 2004.

Lance R. Stelzer, Paul Morris, Miami, FL, for Plaintiff.

Warren Bittner, Miami City Attorney's Office, Miami, FL, for Defendants.

### ORDER ON OFFICER PEREZ'S MOTION FOR SUMMARY JUDGMENT

JORDAN, District Judge.

In the fall of 1997, Ricardo Perez, a City of Miami police officer, shot Juan Pablo Hernandez. That much, but little more, is undisputed.

In 1999, Mr. Hernandez filed this action against Officer Perez and the City of Miami for damages resulting from the shooting and the preceding stop. In his complaint, Mr. Hernandez asserted claims under 42 U.S.C. § 1983 and under state law. Following discovery, Officer Perez and the City moved for summary judgment, with Officer Perez arguing, in part, that he was entitled to qualified immunity.

Magistrate Judge Brown issued a report [D.E. 105] recommending that the motion for summary judgment filed by Officer Perez [D.E. 70] be denied as to the § 1983 Fourth Amendment excessive force claim, denied as moot as to the state law claim, and granted in all other respects. Essentially, Magistrate Judge Brown recommended that only Mr. Hernandez's Fourth Amendment excessive force claim—the claim arising out of the shooting—proceed to trial.

Mr. Hernandez has not filed any objections to the report, and I adopt Magistrate Judge Brown's recommendations without further discussion as to all claims with the exception of the shooting claim. As to that claim, Officer Perez has filed objections. After a de novo review of the record, and for the reasons which follow, I agree with Magistrate Brown that only Mr. Hernandez's Fourth Amendment claim against Officer Perez arising from the shooting survives summary judgment, and that this claim should be resolved by a jury.

### I. THE APPLICABLE STANDARDS

Under Rule 56, summary judgment is appropriate if there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. At the summary judgment stage, a court may not resolve factual disputes or weigh the evidence. Instead, it must view the evidence, and all reasonable inferences, in favor of the non-moving party. *See, e.g., Carter v. Galloway*, 352 F.3d 1346, 1348–49 (11th Cir.2003); *Prickett v. DeKalb County*, 349 F.3d 1294, 1296 (11th Cir.2003).

Where, as here, a defendant raises the defense of qualified immunity, and shows that he was acting within the scope of his discretionary authority, the plaintiff has the burden of overcoming that defense. *See, e.g., Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir.2003). In analyzing a qualified immunity defense, a court must conduct a two-part inquiry. First, it must determine if the facts, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated the plaintiff's constitutional rights. Second, it must determine whether the plaintiff's rights were clearly established—that is, whether it would have been clear to a reasonable officer that the defendant's conduct was unlawful. *See, e.g., Saucier v. Katz*, 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Vaughan v. Cox*, 343 F.3d 1323, 1329 (11th Cir.2003). The "salient question" is whether the state of the law gave the defendant "fair warning" that his alleged conduct was unconstitutional. *See Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

### II. MR. HERNANDEZ'S VERSION OF THE SHOOTING

As in many cases, the parties' versions of events differ greatly, and Magistrate

Judge Brown's report accurately sets out the competing accounts. Because the case is in a summary judgment posture, however, the facts must be viewed in the light most favorable to Mr. Hernandez, the non-moving party. Those facts follow.

On Saturday, September 13, 1997, at around 6:00 p.m., while there was still daylight, Officer Perez—who was in his patrol car—saw Mr. Hernandez walking on S.W. 9th Street and 5th Avenue heading north. This area is "residential middle class" and is not a "high crime" area.

Officer Perez saw that Mr. Hernandez was fumbling around with his waistband, and froze momentarily when he made eye contact with Officer Perez. Mr. Hernandez had a nine millimeter semi-automatic handgun in the right side of his waistband.[1] Although Officer Perez did not see a gun, and did not believe that Mr. Hernandez had committed any crime or violation, he thought Mr. Hernandez was acting suspiciously. Officer Perez therefore moved his patrol car so that Mr. Hernandez was a bit ahead of the car. Officer Perez drew his gun, pointed it at Mr. Hernandez, and told Mr. Hernandez to stop and to pull his shirt up. Mr. Hernandez did not initially comply.[2] When Mr. Hernandez said he had not done anything wrong, Officer Perez—who was still in the driver's seat of the patrol car—ordered him to come closer to the car and to pull his shirt up.

Mr. Hernandez approached the patrol car and stood by the front passenger's window at the pillar or column between the front and back seats. That window was open. With Officer Perez still pointing his gun at him, Mr. Hernandez pulled up his shirt, grabbed the handle of the gun he had in his waistband with his thumb and index finger, so that the barrel was pointed down, and "dropped" the gun inside the open front passenger window. As soon as he did this, Mr. Hernandez "turned around" and started running away from the patrol car. Without telling Mr. Hernandez to stop or giving any other warning, and while sitting in the driver's seat of the patrol car, Officer Perez discharged his weapon. The shot hit Mr. Hernandez, who was about fifteen feet away, in the back. Officer Perez closed his eyes or blinked right after he fired.[3]

Mr. Hernandez underwent surgery, and was hospitalized for about a month and a half. Doctors removed his spleen, one of his kidneys, a portion of his intestine, and a portion of his pancreas. The bullet Officer Perez fired is still lodged inside Mr. Hernandez.

The state filed several criminal charges against Mr. Hernandez as a result of the incident: (1) carrying a concealed weapon; (2) grand theft of the gun; (3) aggravated assault on a police officer; and (4) violation of probation. The first three charges were nolle prossed after the state court suppressed the gun, and Mr. Hernandez was sentenced to credit time served for the probation violation.

---

1. Mr. Hernandez had taken the gun from a friend. These facts surrounding Mr. Hernandez's acquisition of the gun may be relevant at trial, but they are irrelevant at this stage of the proceedings because Officer Perez was unaware of how Mr. Hernandez had obtained the gun.

2. Mr. Hernandez said he did not comply because he was a felon on probation and was not supposed to have a weapon.

3. In contrast to Mr. Hernandez's version of events, Officer Perez testified that he fired because Mr. Hernandez pointed the gun at him and started to walk away with the gun still pointed. Officer Perez said that he feared that he was going to be shot by Mr. Hernandez. As noted above, however, the facts must be viewed in the light most favorable to Mr. Hernandez.

## III. ANALYSIS

In his objections to Magistrate Judge Brown's report, Officer Perez makes two arguments. First, he contends that the shooting did not violate Mr. Hernandez's Fourth Amendment rights. Second, he asserts that even if there was a Fourth Amendment violation, he is entitled to qualified immunity. Each of these arguments is addressed below, under the *Saucier* framework. .

### A. WAS THERE A FOURTH AMENDMENT VIOLATION?

 The standard for an excessive force claim under the Fourth Amendment is "objective reasonableness" from the "perspective of an officer on the scene." *Pace v. Capobianco,* 283 F.3d 1275, 1281 (11th Cir.2002). There is "no bright line for identifying force as excessive," and so a "case by case balancing," in which all the circumstances are weighed, is necessary. *Jackson v. Sauls,* 206 F.3d 1156, 1170 (11th Cir.2000) (internal quotation marks and citations omitted). But, as noted above, in a summary judgment posture the facts and inferences are viewed in the light most favorable to the non-moving party. Thus, the constitutional focus is on the perspective of a reasonable officer at the scene given the version of events put forth by Mr. Hernandez.

The Fourth Amendment inquiry begins with *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), which addressed the use of deadly force on fleeing felons:

> The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally un-

reasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. . . .

> [But][w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Id.* at 11–12, 105 S.Ct. 1694. Applying this standard, the Supreme Court held in *Garner* that a police officer violated the Fourth Amendment when he shot an young, unarmed, suspected nighttime burglar because the officer did not have reason to believe the suspect posed any physical danger to himself or others. The Supreme Court found a Fourth Amendment violation even though the officer told the suspect to halt before shooting. *Id.* at 3–4, 20–21, 105 S.Ct. 1694.

 In this case, the facts, viewed in the light most favorable to Mr. Hernandez, show that Officer Perez viewed Mr. Hernandez as a felony suspect—the possible felonies being the carrying of a concealed firearm and aggravated assault on a police officer [4]—that Mr. Hernandez dropped his

---

4. Officer Perez argues that when Mr. Hernandez grabbed the gun from his waistband and dropped it on the passenger seat of Officer Perez's car, he committed aggravated assault. I assume that Officer Perez had arguable probable cause to believe that Mr. Hernandez committed an aggravated assault, but as explained in the text, any such assault was completed prior to the time of the shooting. Officer Perez shot Mr. Hernandez in the back as he was running away unarmed.

weapon inside Officer Perez's car through the open front passenger window, that Mr. Hernandez ran away unarmed after dropping his weapon, that Officer Perez shot Mr. Hernandez in the back as he was running away without giving any sort of warning, and that Mr. Hernandez was about fifteen feet away from Officer Perez's car when he was shot. As I see it, these facts allow a reasonable jury to find a Fourth Amendment violation (i.e., that Officer Perez acted unreasonably in shooting Mr. Hernandez).

Understanding that Fourth Amendment cases, including those under *Garner* involving the use of deadly force, are fact-specific, the Eleventh Circuit's recent decision in *Vaughan*, 343 F.3d at 1328–29, is instructive. *Vaughan* involved a shooting in January of 1998 (about four months after the shooting in this case). Various police officers who were following a stolen truck on an interstate at or near the speed limit of 70 m.p.h. decided to use a "rolling roadblock" to stop the vehicle. The truck accidentally collided with the police car in front of it during the roadblock, and then accelerated away. One officer positioned his vehicle behind the truck and unholstered his weapon. After the officer put on his lights, the truck sped away at 85 m.p.h., but did not make any motion towards the officer's vehicle. The officer then fired three shots into the truck without warning, with one of the bullets paralyzing the passenger of the truck. The Eleventh Circuit, after relating these facts (which were viewed in the light most favorable to the passenger, who was the plaintiff), held that "a reasonable jury could find that the [officer] acted unreasonably in firing at the ... truck." *Id.* at 1329. It explained that a reasonable jury could conclude that at the time of the shooting (1) the officer "did not have probable cause to

believe that ... [the suspects'] flight posed an immediate threat of serious harm to [the police officers who were chasing the truck or innocent motorists]," or that the driver and passenger of the truck "had committed a crime involving the infliction of physical harm;" (2) "the use of deadly force was not necessary to stop the suspects;" and (3) "it was feasible to warn [the suspects] of the possible use of deadly force." *Id.* at 1330. As in *Vaughan*, a reasonable jury could find that Officer Perez did not have probable cause to believe that Mr. Hernandez, *after having dropped the weapon and having run away from the car unarmed*, posed an immediate threat of serious harm to him or others; that the use of deadly force was not necessary to stop Mr. Hernandez; and that it was feasible for Officer Perez to command Mr. Hernandez to stop or shout some warning before using deadly force.

The fact that Mr. Hernandez brandished a weapon and committed (or arguably committed) an aggravated assault prior to being shot does not mean that the shooting was constitutionally reasonable as a matter of law, particularly in light of the *en banc* decision in *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1496 & n. 1, 1502 (11th Cir. 1985) (*en banc*) (affirming judgment in favor of representative of decedent who was shot and killed by officer in the course of arrest, and finding Fourth Amendment violation under *Garner*, even though decedent (1) had reportedly pulled a gun on another driver earlier in an traffic altercation, (2) had already tried to escape from police twice after being detained, and (3) had grabbed for an officer's gun while trying to break free for a third time (with the gun falling to the ground), because decedent did not have a weapon at time of shooting and posed no danger, and because officers had struck decedent before he grabbed for gun).[5] Moreover, in addi-

---

**5.** Some of the facts are taken from Judge Tjoflat's *en banc* dissent and the panel opin-

ion. *See* 774 F.2d at 1509–10 (Tjoflat, J.,

tion to *Gilmere*, there are other Eleventh Circuit *Garner* decisions finding a Fourth Amendment violation in circumstances similar to those here. *See, e.g., Acoff v. Abston,* 762 F.2d 1543, 1545, 1547–48 (11th Cir.1985) (reversing directed verdict against plaintiff, a burglary suspect who had been shot in the chest while fleeing and holding some objects in his hands, because officer did not give any warning and because jury could have disbelieved officer's testimony that he had heard earlier shot and thought that plaintiff might have shot his partner); *Pruitt v. City of Montgomery,* 771 F.2d 1475, 1477–84 (11th Cir.1985) (affirming summary judgment in favor of plaintiff, a nighttime burglary suspect who had been shot after he refused to obey order to halt, as there was no evidence that plaintiff posed any physical threat to officer or others or that plaintiff had committed a crime involving the infliction or threatened infliction of serious physical harm); *Lundgren v. McDaniel,* 814 F.2d 600, 602–03 (11th Cir.1987) (affirming jury verdict in favor of plaintiff, a suspect in a burglary found inside a video store at night who was shot by officers, where evidence, in light most favorable to verdict, showed that plaintiff did not reach for a weapon, did not threaten officers, and did not shoot at officers); *Carr v. Tatangelo,* 338 F.3d 1259, 1268–69 (11th Cir.2003) (suspect who was shot after he threw a rock at bushes from where police were conducting surveillance, and while he had his hand up to throw another rock, "stated a cognizable Fourth Amendment seizure claim").[6]

To the extent that Officer Perez asserts in his objections that he did not see Mr. Hernandez drop his weapon, and that he believed that Mr. Hernandez was still pointing a gun at him at the time of the shooting, the argument misses the mark because it fails to view the evidence and the inferences in the light most favorable to Mr. Hernandez. Mr. Hernandez testified that after he dropped the gun into the passenger seat, he turned around and ran away unarmed. Officer Perez testified that he closed his eyes right after he fired the weapon, not before he fired. Given that Officer Perez was right next to the passenger seat, that the gun was dropped into the passenger seat before the shooting, and that Mr. Hernandez was shot about fifteen feet away from the police car, the reasonable inference is that Officer Perez saw Mr. Hernandez drop the gun into the passenger seat (or at the very least that Officer Perez did not see Mr. Hernandez point a gun at him while running away).

Officer Perez argues that he did not need to wait for Mr. Hernandez to point his gun at him and kill him. Although Officer Perez's general statement is correct, the problem with his argument is, again, that is not faithful to how the facts must be viewed at summary judgment. Had Officer Perez fired in the split second that Mr. Hernandez was grabbing his own gun, or even as Mr. Hernandez was dropping the gun in the passenger seat, there would not be a Fourth Amendment violation. No one would (or should) second-

dissenting); 737 F.2d 894, 898 (11th Cir. 1984).

**6.** With the exception of *Carr,* Officer Perez does not cite or discuss any of these cases in his objections to Magistrate Judge Brown's report. With respect to *Carr,* Officer Perez describes it as holding that there was no Fourth Amendment violation. I read it to hold that a Fourth Amendment violation was

stated, but that the officers were entitled to qualified immunity under the second *Saucier* prong. At most the Eleventh Circuit bypassed the Fourth Amendment question and addressed qualified immunity. *See* 338 F.3d at 1259 ("Having determined that Carr has stated a cognizable Fourth Amendment seizure claim, we must decide if the officers violated clearly established law in shooting him.").

guess an officer who fired at the moment he reasonably believed that his life was on the line. *See Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."). But this is not what occurred, at least not in the version of events that must be accepted for summary judgment purposes. Instead, Officer Perez shot Mr. Hernandez in the back after he had dropped his weapon and as he was running away unarmed. Moreover, Officer Perez shot Mr. Hernandez when he was about fifteen feet away from the police car, indicating that any threat had dissipated. Finally, Officer Perez did not give any sort of warning prior to firing.

There are, of course, Eleventh Circuit decisions in *Garner* deadly force cases concluding that there was no Fourth Amendment violation. But in each of the cases the suspect was, at the moment of the shooting, threatening an officer or a member of the public, and there was no such threat here. Indeed, Mr. Hernandez had dropped his weapon and was running away unarmed. *See, e.g., O'Neal v. DeKalb County,* 850 F.2d 653, 655, 657–58 (11th Cir.1988) (officers' use of deadly force in shooting hospital patient was reasonable because patient had gone on a rampage through the hospital and stabbed several people, and because patient, when told to drop his knife and lie on the ground, rushed the officers with his knife); *Menuel v. City of Atlanta,* 25 F.3d 990, 994–97 (11th Cir.1994) (officers did not violate

Fourth Amendment by shooting mentally troubled person, who had previously lunged at them with a knife, when she opened fire on them as they entered locked bedroom); *Harrell v. Decatur County,* 41 F.3d 1494, 1494 (11th Cir.1995) (adopting, on rehearing, panel dissent, *see* 22 F.3d 1570, 1577–81 (11th Cir.1994) (Dubina, J., dissenting)) (officer's shooting of plaintiff did not violate Fourth Amendment where officer attempted to arrest plaintiff roadside for driving under the influence of alcohol, plaintiff attacked officer (hitting him with a flashlight and kicking him in a ditch), plaintiff tried to look for officer's gun, and plaintiff got back into his car and reached under the seat for what might have been a weapon); *Pace,* 283 F.3d at 1281–83 (shooting of suspect did not violate Fourth Amendment where suspect broke away from police who were trying to arrest him for driving without a driver's license and for giving a false name, suspect drove away from police despite being pepper sprayed, suspect led police on a high speed chase for 15 minutes, suspect drove dangerously in front of various police cars and drove through a front yard at 50–60 m.p.h., suspect almost hit an elderly motorist, suspect refused to get out of car when ordered to do so by police, and shooting took place as suspect's car was still moving—suspect appeared to reasonable police officers to have been "gravely dangerous"); *McCormick v. City of Ft. Lauderdale,* 333 F.3d 1234, 1246 (11th Cir.2003) (officer did not violate Fourth Amendment when he shot suspect who had committed aggravated battery— suspect would not release walking stick, even after being pepper sprayed twice, refused commands to drop stick, and charged officer with stick in striking position).[7] In the words of *Vaughan,* 343 F.3d

---

7. Other police shooting cases in the Eleventh Circuit are less helpful for a variety of reasons. *See Fundiller v. City of Cooper City,* 777 F.2d 1436, 1441 & n. 3 (11th Cir.1985) (addressing only substantive due process claim);

*Samples v. City of Atlanta,* 846 F.2d 1328, 1331 & n. 5 (11th Cir.1988) (addressing only substantive due process claim, but nevertheless analyzing issue of excessive force);

**1380**

at 1330, "[g]enuine issues of material fact remain as to whether [Mr. Hernandez's] flight presented an immediate threat of serious harm to [Officer Perez] or others at the time [Officer Perez] fired the shot that struck [Mr. Hernandez]."

### B. Is Officer Perez Entitled to Qualified Immunity?

■ Having concluded that a reasonable jury could find that the shooting violated the Fourth Amendment, I now turn to the second *Saucier* prong—whether "it would have been clear to an objectively reasonable officer that [Officer Perez's] conduct was unlawful." *Vaughan*, 343 F.3d at 1332. Under the qualified immunity standard, "an officer will be entitled to qualified immunity if he had 'arguable probable cause' to employ deadly force; in essence, [the question is] whether the 'officer reasonably could have believed that probable cause existed' to use deadly force." *Id.* (citation omitted). Stated differently, qualified immunity applies unless "th[e] use of deadly force would have been seen as plainly unlawful by all objectively reasonable officers." *Willingham v. Loughnan*, 321 F.3d 1299, 1304 (11th Cir.2003).

■ Taking Mr. Hernandez's version of events, no objectively reasonable officer in Officer Perez's position could have reasonably believed that he was entitled to use deadly force to apprehend Mr. Hernandez and prevent his escape. First, Eleventh Circuit *Garner* decisions prior to 1997— *Gilmere, Acoff, Pruitt*, and *Lundgren* (all of which are summarized above)—gave a reasonable officer "fair warning," *Hope*, 536 U.S. at 741, 122 S.Ct. 2508, that using deadly force in these circumstances—i.e., shooting an unarmed felony suspect in the back as he is running away without providing any sort of a warning—was unconstitu-

tional under a "common sense" application of *Garner*. *See Vaughan*, 343 F.3d at 1332–33. *See also Vinyard v. Wilson*, 311 F.3d 1340, 1352 (11th Cir.2002) ("if the circumstances facing a government official are not fairly distinguishable [from prior cases], that is, are materially similar, the precedent can clearly establish the applicable law").

I understand that "preexisting, factually similar cases are—not always, but ... usually—needed to demonstrate that officials were fairly warned that their application of force violated the victim's constitutional rights," *Willingham*, 321 F.3d at 1303, but that requirement is met here. If the shooting in *Gilmere* violated the Fourth Amendment, as the *en banc* Eleventh Circuit said it did, then the use of deadly force here by Officer Perez—under Mr. Hernandez's set of facts—was plainly unlawful to all objectively reasonable officers. First, the police officer in *Gilmere* fired at a felony suspect who had allegedly pulled a gun on a driver in a previous altercation, who had broken away twice from police, and who—in a third attempt to escape— tried to grab another officer's weapon (with the weapon falling to the ground). Here, Mr. Hernandez had dropped or given up his weapon, and Officer Perez could not have reasonably believed that Mr. Hernandez presented an "immediate threat of serious harm," *Vaughan*, 343 F.3d at 1332, to himself or others. Second, Officer Perez did not provide any sort of warning prior to discharging his gun, and it appears—again viewing the facts in Mr. Hernandez's favor—that it was feasible for Officer Perez to have provided a warning. Third, Officer Perez fired from inside the patrol car through the open passenger window, increasing the risk that someone else might be shot (because Offi-

*Brown v. City of Clewiston*, 848 F.2d 1534, 1536 n. 1, 1537 (11th Cir.1988) (addressing only municipal liability claim and assuming,

for purposes of discussion, that shooting by officer violated Fourth Amendment).

cer Perez had a limited line of sight from inside the car). Simply put, Officer Perez's actions, under Mr. Hernandez's version of events, were not "objectively reasonable." *Id.*

Officer Perez points to Eleventh Circuit *Garner* deadly force cases which have granted qualified immunity to the officers in question. These cases, however, are distinguishable on their facts, as they involve the then-unsettled constitutional rights of pretrial detainees or situations where individuals presented a threat to the officers. *See Wright v. Whiddon,* 951 F.2d 297, 298–300 (11th Cir.1992) (granting qualified immunity to officer who shot unarmed pretrial detainee who had fled from courthouse, even though shooting was six months after *Garner,* because *Garner* did not address the use of deadly force on pretrial detainees, and law was therefore not clearly established); *Montoute v. Carr,* 114 F.3d 181, 183–85 (11th Cir.1997) (granting qualified immunity (on arguable probable cause grounds) to officer who shot arrestee, where arrestee fired sawed-off shotgun in crowd near riot situation, failed to heed repeated warnings to drop shotgun, and ran away from the officer with shotgun in hand); *Wood v. City of Lakeland,* 203 F.3d 1288, 1289–93 (11th Cir.2000) (granting qualified immunity to officer who shot person threatening suicide—person could not be talked into coming out of residence, police saw blood on the floor when they entered the residence, person's arms were covered in blood, person had knife or box cutter in his hand and refused to drop it, and person moved towards officers with knife or box cutter); *Willingham,* 321 F.3d at 1302–04 (officers who shot plaintiff in October of 1987 were entitled to qualified immunity because plaintiff threw objects at them, including a knife at the back of one officer in an attempt to kill him, and shots were fired within split second of plaintiff's actions); *Carr,* 338 F.3d at 1269–70 (granting qualified immunity to officers who shot suspect who had thrown a rock at bushes from where police were conducting surveillance—officers thought that suspect had raised weapon and heard chambering of bullets, and fired to protect themselves and others). In this case, at the time of the shooting, Mr. Hernandez was running away after having disarmed himself, and had his back to Officer Perez, who did not provide any warning before firing. Under these facts, there was no probable cause, and no arguable probable cause, to use deadly force.

## IV. CONCLUSION

Officer Perez's motion for summary judgment [D.E. 70] is DENIED AS MOOT as to the state law claim, and GRANTED as to all federal claims except the Fourth Amendment excessive force claim arising out of the shooting. As to that claim, the facts, viewed in the light most favorable to Mr. Hernandez, allow a reasonable jury to find a Fourth Amendment violation. And under those facts, Mr. Hernandez has met his burden of showing that Officer Hernandez is not entitled to qualified immunity at this stage of the proceedings. Officer Perez, however, is not precluded from asserting a qualified immunity defense at trial, *see Vaughan,* 343 F.3d at 1333, and may request special interrogatories to resolve factual disputes going to that defense.

Trial is set for the two-week period beginning on March 8, 2004. Calendar call will be on March 2, 2004, at 9:00 a.m.