**Betty WILLINGHAM, Plaintiff–Appellee–Cross–Appellant,**

v.

**James LOUGHNAN, Brian Buecler, Defendants–Appellants–Cross–Appellees.**

No. 99–4005.

United States Court of Appeals, Eleventh Circuit.

Feb. 18, 2003.

George P. Roberts, Jr., Roberts & Reynolds, P.A., West Palm Beach, FL, Christine M. Duignan, Johnson, Anselmo, Murdoch, Burke & George, Ft. Lauderdale, FL, for Loughnan and Buecler.

Barbara Ann Heyer, Heyer & Associates, P.A., Ft. Lauderdale, FL, for Willingham.

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before EDMONDSON, Chief Judge, and BLACK and McKAY *, Circuit Judges.

EDMONDSON, Chief Judge:

The Supreme Court decision in *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), did not change the preexisting law of the Eleventh Circuit much.[1] So, the result in this case, which is a case that has been remanded to us from the Supreme Court for reconsideration in the light of *Hope*, remains the same. We have reconsidered our previous decision. We conclude the law still demands that the individual defendants be protected by the defense of qualified immunity.

---

* Honorable Monroe G. McKay, United States Circuit Judge for the Tenth Circuit, sitting by designation.

1. The Supreme Court's decision in *Hope* definitely did change the law of the Circuit some. *Hope* is a case that passed through this Court on its way to the Supreme Court. Our Court concluded that the individual defendants were due qualified immunity. The Supreme Court decided that our Court had reached the wrong conclusion in the light of *Gates v. Collier*, 501 F.2d 1291 (5th Cir.1974). In cases like *Hope*, the law of the Circuit is not now what it was.

We—in our earlier decision, *Willingham v. Loughnan,* 261 F.3d 1178 (11th Cir. 2001)—resolved arguments of issue preclusion, which impacted on a correct reading of the facts. We concluded that, in the light of the facts that must have been determined by the criminal-jury trial and the facts that might have been found by this jury viewed with an eye most favorable to the Plaintiff, these events make up the pertinent circumstances:

> [T]hat Plaintiff obtained a number of objects from the kitchen and threw them at Panucci and Loughnan. She threw a glass at Loughnan, striking him in the shoulder; and then she picked up a knife in the kitchen and threw it at Panucci's back in an attempt to kill him. She immediately thereafter raised her hands to her head and, at that time, was shot four times by each of the Officer Defendants. The shots were fired within a split-second of her assault on Loughnan and of her attempt to kill Panucci, but while she was unarmed. She was also standing in the doorway to the kitchen where she had obtained the bottles and knife she had already thrown at the officers.

*Id.* at 1185–86.

▮ The Officer Defendants are entitled to qualified immunity for their acts unless they—given the circumstances—violated a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Hope,* 122 S.Ct. at 2515 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The Supreme Court has said that an official is entitled to "*notice* [his] conduct is unlawful," *Id.* (quoting *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2158, 150 L.Ed.2d 272 (2001))(emphasis added), and to " '*fair warning*' that his conduct deprived his victim of a constitutional right." *Id.* (emphasis added).

This notice or fair warning flows from the applicable law's being "clearly established" at the time of the official's alleged unlawful conduct.

▮ "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that *what he is doing* violates that right.'" *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987))(emphasis added). The unlawfulness must have been apparent. *Id.* In many—if not most—instances, the apparency of an unlawful action will be established by (if it can be established at all) preexisting caselaw which is sufficiently similar in facts to the facts confronting an officer, such that we can say every objectively reasonable officer would have been on "fair notice" that the behavior violated a constitutional right.

▮ The Supreme Court in the *Hope* opinion stresses that preexisting caselaw with "materially similar" or "fundamentally similar" facts is not always necessary to give an official "fair warning" of unlawful behavior. *Id.* at 2516. "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Id.* General statements of the law contained within the Constitution, statute, or caselaw may sometimes provide "fair warning" of unlawful conduct:

> [G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful.

**1302**

*Id.* (quoting *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997))(alteration in original)(internal quotation marks and citation omitted).[2] Officials sometimes can still receive "notice that their conduct violates established law even in novel factual circumstances." *Id.*

■ Decisions of this Court before the Supreme Court's *Hope* decision demonstrate that the law of the Circuit harmoniously complies with the Supreme Court's reminder. We have repeatedly acknowledged the possibility that a general statement of the law might provide adequate notice of unlawfulness in the right circumstances. For example, before the Supreme Court's decision in *Hope,* this Court *en banc* specifically stated that "general statements of law" were capable of giving fair warning of unconstitutional official behavior:

> We acknowledge that preexisting case law, tied to the precise facts, is not in every situation essential to establish clearly the law applying to the circumstances facing a public official so that a reasonable official would be put on fair and clear notice that specific conduct would be unlawful in the faced, specific circumstances. Some general statements of law are capable of giving fair and clear warning in some circumstances: the occasional "obvious clarity" cases per *Lanier.*

*Marsh v. Butler County, Alabama,* 268 F.3d 1014, 1031 n. 9 (11th Cir.2001)(internal citations omitted); *see also, e.g., Jenkins v. Talladega City Bd. of Educ.,* 115 F.3d 821, 825 n. 3 (11th Cir.1997)(en banc)(stating "general principles of [decisional] law *can* provide fair warning" if constitutional rule applies with "obvious clarity" to circumstances facing defendant); *Lee v. Ferraro,* 284 F.3d 1188, 1199

(11th Cir.2002)(recognizing exception to requirement for factually similar cases where conduct so clearly unlawful that preexisting caselaw unnecessary); *Rodriguez v. Farrell,* 280 F.3d 1341, 1350 n. 18 (11th Cir.2002)("We very occasionally encounter the exceptional case in which a defendant officer's acts are so egregious that preexisting, fact-specific precedent was not necessary to give clear warning to every reasonable (by which we, in the qualified immunity context, always mean every objectively reasonable) officer that what the defendant officer was doing must be 'unreasonable' within the meaning of the Fourth Amendment."); *Skrtich v. Thornton,* 280 F.3d 1295, 1304 n. 9 (11th Cir.2002)("[S]ome conduct is so obviously contrary to constitutional norms that even in the absence of caselaw, the defense of qualified immunity does not apply."); *Brent v. Ashley,* 247 F.3d 1294, 1303 n. 10 (11th Cir.2001)(noting general statements of law capable of giving fair warning to officials); *Priester v. City of Riviera Beach, Florida,* 208 F.3d 919, 926 (11th Cir.2000)(stating conduct which lies at core of Fourth Amendment prohibition makes unlawfulness readily apparent without preexisting caselaw; defense of qualified immunity not allowed); *Smith v. Mattox,* 127 F.3d 1416, 1419 (11th Cir.1997)(same). It is not news to us that official conduct may be so egregious that further warning and notice beyond the general statement of law found in the Constitution or the statute or the caselaw is unnecessary; when we first decided this case, we did not believe that precedents with materially similar facts are always needed to overcome the defense of qualified immunity.

The Supreme Court has said the Fourth Amendment permits only those applications of force by law enforcement as are

**2.** For a recent opinion discussing general statements of law and "fair warning" after *Hope,* see *Vinyard v. Wilson,* 311 F.3d 1340, 1349–53 (11th Cir.2002).

"reasonable." *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). "Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case...." *Id.* at 1872 (alteration in original).

We have said that preexisting, factually similar cases are—not always, but (in our experience) usually—needed to demonstrate that officials were fairly warned that their application of force violated the victim's constitutional rights. Officers facing split-second decisions in dangerous or life-threatening situations are seldom provided with fair warning, notice or guidance by a general requirement of "reasonableness." *See Priester,* 208 F.3d at 926 ("In the context of Fourth Amendment excessive force claims, we have noted that generally no bright line exists for identifying when force is excessive; we have therefore concluded that unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is *usually* entitled to qualified immunity.")(emphasis added); *Smith,* 127 F.3d at 1419 ("A reasonable official's awareness of the existence of an abstract right, such as a right to be free of excessive force, does not equate to knowledge that *his* conduct infringes the right. Thus, if case law, in factual terms, has not staked out a bright line, qualified immunity *almost always* protects the defendant.")(second emphasis added)(internal quotation marks omitted); *see generally Marsh,* 268 F.3d at 1030–1033 (discussing standard of reasonableness and use of precedents).

The Supreme Court, in *Hope,* cautions against a "rigid gloss on the qualified immunity standard" that would require materially similar, preexisting cases in all circumstances when the qualified immunity defense is to be overcome. *Hope,* 122 S.Ct. at 2512. Such a "rigid gloss" would be in variance with the law of the Supreme Court and the law of this Circuit. We have denied qualified immunity in the absence of precedents with similar facts.

We have said, in the context of excessive force cases, that an official's conduct could run so afoul of constitutional protections that fair warning was present even when particularized caselaw was absent: "the official's conduct was so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without caselaw on point." *Priester,* 208 F.3d at 926 (internal quotation marks omitted and second alteration in original). And we, in the absence of particularized caselaw, have acted to deny qualified immunity to officials whose use of force clearly exceeded the "hazy border" surrounding acceptable force. *See Lee,* 284 F.3d at 1199 (denying qualified immunity—without particularized precedent—in excessive force case where officer slammed arrestee's head on car trunk after "she was arrested, handcuffed, and completely secured, and after any danger to the arresting officer as well as any risk of flight had passed"); *Slicker v. Jackson,* 215 F.3d 1225, 1232–33 (11th Cir.2000)(denying qualified immunity—without particularized precedent—to officers who slammed arrestee's head into pavement, "even though he was handcuffed and did not resist, attempt to flee, or struggle with the officers in any way"); *Priester,* 208 F.3d at 927 (denying qualified immunity—without particularized precedent—in excessive force case where officer "ordered and allowed his dog to attack and bite Plaintiff; threatened to kill Plaintiff when Plaintiff kicked the dog in an effort to resist the unprovoked attack; and let the dog attack Plaintiff for at least two

minutes"); *Smith,* 127 F.3d at 1420 (denying qualified immunity—without particularized precedent—to officer who broke arm of unresisting arrestee).

 The specific question before us here is whether, considering the pertinent facts, the Officer Defendants violated federal law that was already clearly established in 1987, by shooting Plaintiff within a "split second" after she attempted to kill one officer and assaulted another. In our earlier opinion, we considered and rejected the argument that, even in the absence of a case with materially similar facts, Fourth Amendment law fairly warned these officers that their conduct was clearly unlawful: this incident was no clearly egregious shooting that was far beyond the hazy border of acceptable force. *Willingham,* 261 F.3d at 1187 n. 14. In accord with *Hope,* we have considered again whether, in the light of general constitutional rules on deadly force that had already been identified in the decisional law, this use of deadly force would have been seen as plainly unlawful by all objectively reasonable officers; and the answer is "no" given the circumstances, including that the shooting occurred within a split second of an attempted murder on a fellow officer. No general decisional rules applied with obvious clarity to these circumstances in such a way as to give fair notice that what these defendants were doing clearly violated federal law. And, as was the situation with our earlier decision,[3] Plaintiff has pointed us to no case of the Supreme Court, Eleventh Circuit, or the Supreme Court of Florida which had already decided that the use of deadly force on a Plain-

tiff—(1) who had just attempted to murder one police officer and assaulted another, (2) who was not under police control, and (3) was close by a source of weapons—was unconstitutional.[4]

Our earlier conclusion remains unaffected by the Supreme Court's decision in *Hope.* We must still conclude the Officer Defendants are entitled to the defense of qualified immunity. We reinstate our prior opinion and judgment and supplement our earlier discussion of qualified immunity with this opinion.

SO ORDERED.

---

3. "Our own survey of the case law indicates that in 1987 it was not clearly established that it constituted excessive force to shoot a person under the circumstances presented in this case." *Willingham,* 261 F.3d at 1187.

4. At our invitation, the parties submitted supplemental briefs on the impact of the Supreme Court's decision in *Hope* to this case. Plaintiff cited several cases she claimed clearly established the law in these circumstances. None of these cases were close to this one in time or fact.