[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 3, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10830
Non-Argument Calendar

_____

D. C. Docket No. 06-81090-CV-DTKH

GARY WAYNE GRIMES,

Plaintiff-Appellant,

versus

STEVEN YOOS,
West Palm Beach Police Officer,
RYAN SECORD,
West Palm Beach Police Officer,
AMY SINNOTT,
West Palm Beach Police Officer,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 3, 2008)**

Before ANDERSON, HULL and FAY, Circuit Judges.

PER CURIAM:

Gary Wayne Grimes, a Florida state prisoner proceeding pro se, appeals the district court's grant of Steven Yoos's, Ryan Secord's, and Amy Sinnot's (collectively, "defendants") joint motion for summary judgment on Grimes's pro se 42 U.S.C. § 1983 complaint. Grimes alleges that he sufficiently showed that the defendants, all city police officers, lacked probable cause to arrest him and used excessive force in arresting him. For the reasons set forth below, we remand in part and affirm in part.

## I. Facts

In his complaint, Grimes explained that he previously was homeless and alleged that, as he slept near a building one night, he was awoken by a sharp pain in his upper left arm. A police dog was biting him, and the defendants were laughing at him and failing to instruct the police dog to release him. One of the defendants instructed the police dog to "get that homeless shit bag." Also, another of the defendants warned Grimes that, if Grimes touched the police dog, the defendant would "kill [Grimes]." Likewise, another of the defendants told Grimes, "I hope [the police dog] rip[s] your fuck[ing] arm off." Eventually, Grimes passed out from blood loss and pain from the dog's bite. Later, he was awoken by Secord slapping him and yelling, "Don't you fuck[ing] die." Ultimately, Secord arrested

2

Grimes "for having a small flashlight in [his] pocket," which Secord called a "burglary tool." Grimes spent two weeks in a hospital and three additional weeks in a jail medical cell. Grimes lost 30% of his arm, which was left grossly disfigured.

The defendants filed separate answers denying all allegations. The defendants also claimed that they (1) used reasonable force to combat Grimes's resistance to arrest and to prevent Grimes's escape and, therefore, did not violate Grimes's constitutional rights, (2) had probable cause to arrest Grimes, and (3) were protected by the doctrine of qualified immunity.

Grimes filed a motion for summary judgment, pursuant to Fed.R.Civ.P. 56(a), arguing that the defendants did not need to use the above-described force in apprehending him because he was asleep at the time of the incident and, therefore, posed no threat of harm or escape. Along with his motion, Grimes submitted, <u>inter alia</u>, the following exhibits. In Sinnot's narrative police report, she stated that she responded to a silent alarm from a certain business. Secord joined her. When they noticed a broken glass window and glass laying on the ground at the front of the building, they requested that canine officer Yoos and his police dog also join them. As Yoos and the police dog cleared the business' interior, Sinnot shined her flashlight into the overgrown vegetation southwest of the building and heard a

noise coming from that area, which noise she suspected was made by the burglary perpetrator. Thus, after the building was cleared, she, Secord, and Yoos, without the police dog, "walk[ed]" that area. They quickly located a recently discarded cash drawer. They could hear movement in the vegetation south of them. The vegetation was very thick and "there was no visibility." Also, they did not know how many suspects were involved, and a bent fence nearby suggested that the suspect was, or suspects were, attempting to flee. Thus, Yoos retrieved the police dog to search the area. Soon, the police dog apprehended Grimes, who was "concealing himself" in the vegetation. Once the defendants saw that Grimes was not armed, Yoos instructed the police dog to release Grimes, and Secord handcuffed Grimes. Sinnot administered first aid to Grimes, and ensured that he was not bleeding at a life-threatening rate, and paramedics were called to further attend to Grimes.

In Secord's narrative police report, he added that other officers who responded to the silent alarm and searched the inside of the building determined that an employee had locked the door to the book keeping room and secured the cash register kept therein and that someone had subsequently broken into this room and taken the cash drawer. A cash drawer was located within 25 feet of where Grimes ultimately was located and apprehended. Upon searching the vegetation

4

after Grimes's arrest, Secord located a blue bag that contained a hammer, screwdriver, and chisel. Also, upon searching Grimes incident to his arrest, Secord located a small yellow flashlight in Grimes's front left pocket and determined that it was a burglary tool. At the hospital, Secord asked Grimes what Grimes wished Secord to do with the aforementioned blue bag. Grimes responded that he wanted the blue bag to accompany him to the county jail. From this, Secord determined that the burglary tools contained therein were Grimes's.

In Yoos's narrative police report, he added that when he and the police dog arrived at the scene, Sinnot informed him of the noises she had heard in the vegetation. Yoos decided to first clear the building. Before entering, Yoos announced his and the police dog's presence and waited a reasonable time for a response from inside before entering. Although no suspects subsequently were found in the building, the police dog alerted to some scent therein. The police dog then was put in Yoos's police car for a "cool down period." While they waited for the police dog to cool down, Sinnot and Yoos approached the area of vegetation to assess how best to "get [the police dog] into the area." At that time, Yoos noticed the aforementioned cash drawer lying on the ground. Yoos then retrieved the police dog and deployed him into the area. The police dog immediately started to "work scent." The police dog followed the scent to a chain link fence. Yoos did

5

not know whether the suspect was on the inside or outside of the fence and so did not announce his or the police dog's presence for fear that the suspect might flee. The police dog continued to work scent and jumped the fence. Yoos had difficulties following the police dog because of the thickness of the vegetation. While Yoos was attempting to get through the vegetation, he heard someone scream to "get the dog." Yoos immediately followed the voice. When Yoos came upon Grimes, he determined that Grimes's hands were clear of any weapons and that the police dog had control of Grimes and then instructed the police dog to release Grimes. Secord then arrested Grimes.

In the version of its policy manual and standards effective at the time of the incident, the police department instructed that the use of canine force was limited to instances in which the police officers had probable cause to believe that such force was necessary to protect the police officers or the public or to apprehend a suspect who fled or hid when the police officers had probable cause to believe that the suspect had committed a felony. Before using such force, the police officers generally were required to give a verbal warning to allow the suspect to surrender. However, when such a warning would "prove unsafe to the search team or allow the offender to escape," the police dog handler conducting the search could decide not to provide the warning.

6

The defendants filed a joint response and cross motion for summary judgment. The defendants argued that their use of canine force was reasonable because they found an empty cash register and a blue bag containing burglary tools in the vegetation, had reason to believe that a felony burglary suspect was fleeing the scene through the vegetation, and had no way of knowing whether this suspect posed a threat to them. Along with their cross motion, the defendants submitted, inter alia, the following exhibits. In Grimes's deposition, he stated that, on the night of the incident, he drank a six-pack of beer, took four Oxycodone pain pills, and fell asleep at approximately 10 p.m. in the vegetation. At the time, he possessed a small black bag, which contained his razor, glasses, toothbrush, and such, and a Bible and flashlight. He did not possess any other bag. When the questioning attorney at the deposition asked Grimes if he possessed the aforementioned blue bag, Grimes refused to respond, stating that he would not discuss the blue bag because the matter was the subject of a motion to suppress. Grimes could not say whether he was "moving around or. . . just lying still" at the time, since he was asleep, but thought it was possible that he was moving around, based on Sinnott's statement that she heard noises from the vegetation and the facts that he was in a lot of pain from a leg injury and was under the influence of medication and alcohol at the time. In their affidavits, the defendants each stated

7

that, at the time of the incident, he or she believed that Grimes posed a threat to his and the other officers' safety.

Grimes filed a response arguing that the defendants did not have probable cause to arrest him. He was asleep in the vegetation at the time and his possession of burglary tools was insufficient without any evidence that he had used them. Also, he never stated that he owned the blue bag or the tools inside. Grimes also argued that the defendants did not have reason to use force in apprehending him and failed to give the appropriate warning before searching the vegetation. Along with his response, Grimes submitted, inter alia, the following exhibits. In Yoos's deposition, taken in connection with Grimes's criminal trial, Yoos stated that, at the time of his apprehension, Yoos saw a blue "knapsack" in the area. In his answers to Grimes's interrogatories, Secord stated that the aforementioned blue bag was discovered before Grimes was arrested.

A magistrate judge recommended denying Grimes's motion for summary judgment and granting the defendants' cross motion for summary judgment. The magistrate first stated that "[t]he sole claim against [the defendants] is that they used, or permitted use of excessive force during Grimes' . . . arrest, by allowing a K-9 police dog to bite him while he was asleep." The magistrate then reasoned that the defendants had used reasonable force. They perceived movement in the

8

vegetation and believed, therefore, that the felony suspect was hiding there. Because of the vegetation, the police officers could not see this suspect and could not know if the suspect was armed, such that they feared for their safety. Thus, Yoos deployed the police dog. After the police dog apprehended Grimes, Yoos immediately determined that Grimes did not pose a threat and instructed the police dog to release Grimes. Thus, the force exerted on Grimes was limited in duration and did not result in substantial physical harm to Grimes. The fact that Yoos did not give a verbal warning before deploying the police dog did not alter this conclusion. The police department's policy manual and standards gave Yoos the discretion not to give a warning if he believed the suspect or suspects would flee, and no binding case law held that this action was "per se objectively unreasonable." Also, because Yoos's actions did not violate a clearly established statutory or constitutional right, of which a reasonable person would be aware, he was entitled to qualified immunity for his use of force. Furthermore, because Yoos's use of canine force was reasonable, there was no need for Secord and Sinnot to intervene to stop the use of force.

Grimes objected to the magistrate's report that the magistrate failed to address Grimes's argument that the police officers did not state why they were arresting him at the time of the police dog attack and only arrested him for

possession of burglary tools after frisking him incident to the original arrest.

The district court conducted an independent review and adopted and affirmed the magistrate's reasoning and conclusion.

## II. Law & Analysis

We review de novo the district court's grant of summary judgment, applying the same standard as the district court and viewing all evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. Burton v. Tampa Housing Authority, 271 F.3d 1274, 1276-77 (11th Cir. 2001). To prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law. Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001).

## A. Probable Cause

We have held that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and [must], therefore, be liberally construed." Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) (regarding claim brought pursuant to § 1983). Pursuant to the Fourth Amendment, a police officer must have probable cause to make a warrantless arrest. Rodriguez v. Farrell, 280 F.3d 1341, 1345 (11th Cir. 2002). Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant

10

a reasonable belief that the suspect had committed or was committing a crime. United States v. Floyd, 281 F.3d 1346, 1348 (11th Cir. 2002).

Initially, we note that the district court did not actually grant summary judgment on Grimes's probable-cause claim. Rather, both the magistrate and the district court failed to acknowledge this claim, focusing instead on Grimes's excessive-force claim. Thus, the question before us is whether Grimes sufficiently raised this claim before the district court, such that it erred in failing to address this matter.

Although neither the magistrate or district court acknowledged as much, Grimes sufficiently raised a probable cause argument before the district court. Granted, Grimes did not specifically state in his § 1983 complaint or in his motion for summary judgment that the defendants had no reason to arrest him, and the defendants did not address probable cause in their cross motion for summary judgment. However, Grimes implied in his complaint that the evidence on which Secord arrested him was paltry, stating that Secord arrested him only "for having a small flashlight in [his] pocket." Also, in Grimes's response to the defendants' cross motion for summary judgment, he specifically argued that the defendants lacked probable cause to arrest him and asserted that he was asleep in the vegetation at the time of the incident and that his possession of tools that might be

11

used in a burglary was insufficient cause for arrest for burglary absent evidence that he used them for this purpose. Giving these pleadings the appropriate liberal reading, the magistrate should have realized that Grimes was arguing that the defendants not only used excessive force in arresting him, but lacked probable cause to arrest him at all. See Boxer X, 437 F.3d at 1110.

Furthermore, even were the aforementioned pleadings insufficient to put the magistrate on notice of Grimes's intent to raise a probable-cause argument, Grimes's specifically referenced this claim in his objections to the magistrate's report and asserted that the magistrate erred in ignoring it. Giving this pleading even a strict reading, the district court should have realized that Grimes was challenging the grounds of his arrest. See id.[1] Moreover, in the defendants' answers, they specifically argued that they had probable cause to arrest Grimes, such that they clearly had the opportunity to defend themselves against this claim. Therefore, Grimes put the magistrate and district court on notice of this argument, and the district court erred in failing to acknowledge it.

Thus, the district court has not considered the above facts as they relate to a finding of probable cause. We note that whether probable cause existed is not

---

[1] The probable-cause question was not subsumed by the excessive-force claim. See Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (holding that "a genuine 'excessive force' claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest").

clear from these facts. Specifically, the record is not consistent with regard to when the defendants became aware of the blue bag containing burglary tools. In his narrative police report, Secord stated that he found the blue bag after Grimes's arrest. In his answers to interrogatories, however, Secord stated that he found the blue bag before Grimes's arrest. Moreover, in his deposition, Yoos stated that he found the blue bag at the same time as Grimes's arrest. Given these discrepancies, the district court is in the best position to analyze Grimes's probable-cause argument. The district court may well find that the defendants had probable cause or were protected by qualified immunity, but nevertheless is in the best position to consider these matters in the first instance. Accordingly, we remand the case to the district court to consider this matter in the first instance. See Schwier v. Cox, 340 F.3d 1284, 1292-94 (11th Cir. 2003) (remanding in a § 1983 case where the district court granted summary judgment for an erroneous reason and therefore failed to consider certain of the plaintiff's arguments, thinking them moot).

### B. Excessive Force

Pursuant to the Fourth Amendment, a police officer must not use excessive force in the course of an arrest. Graham v. Connor, 490 U.S. 386, 388, 394-95, 109 S.Ct. 1865, 1867-68, 1871, 104 L.Ed.2d 443 (1989). Likewise, a police officer with the ability to do so must intervene to stop another police officer's use

of excessive force. <u>Priester v. City of Riviera Beach, Fla.</u>, 208 F.3d 919, 924-25 (11th Cir. 2000). The Supreme Court has held that, in addressing such a claim, a police officer's use of force should be reviewed for "objective reasonableness." <u>Graham</u>, 490 U.S. at 395, 109 S.Ct. at 1871. The Supreme Court instructed that "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." <u>Id.</u> at 396, 109 S.Ct. at 1871. The Supreme Court also instructed that proper application of this standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Id.</u>, 109 S.Ct. at 1872. Finally, the Supreme Court has held that the review for reasonableness must be done "without regard to [the police officers'] underlying intent or motivation," as "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force." <u>Id.</u> at 396-97, 109 S.Ct. at 1872.

In a civil rights action under § 1983, however, the doctrine of qualified immunity might shield the defendants from liability. See <u>Harlow v. Fitzgerald</u>,

14

457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Pursuant to this doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. Under this standard, once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). To do so, the plaintiff first must demonstrate that the defendant violated his constitutional rights. Id. The plaintiff then must demonstrate that the "right was clearly established." Id.

Regarding the clearly established prong, we have held that, "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003) (emphasis in original). Such 'fair notice' may be given by (1) a clear statute or constitutional provision, (2) caselaw that is factually on point, or (3) general principles of law combined with the severity of the conduct. See Vinyard, 311 F.3d 1350-52. Indeed, we explained that "preexisting, factually similar cases are–not always, but (in our experience) usually–needed to demonstrate that officials were fairly warned

15

that their application of force violated the victim's constitutional rights."

Willingham v. Loughnan, 321 F.3d 1299, 1303 (11th Cir. 2003). We recognized,

however, that a police officer's conduct may be "so far beyond the hazy border

between excessive and acceptable force that [he or she] had to know [that he or

she] was violating the Constitution even without caselaw on point." Id. As an

example of a case in which the constitutional right was found to be clearly

established by way of the severity of the conduct alone, we cited Priester. In that

case, we explained:

> Plaintiff was a suspect in the burglary of a golf shop. Approximately $20 of snacks and crackers were stolen. When the police discovered Plaintiff, he submitted immediately to the police. When ordered by Defendant Wheeler to get down on the ground, Plaintiff complied. There was no confusion. Plaintiff did not pose a threat of bodily harm to the officers or to anyone else. And, he was not attempting to flee or to resist arrest. On Plaintiff's version of the facts, which we must accept, Defendant Wheeler ordered and allowed his dog to attack and bite Plaintiff; threatened to kill Plaintiff when Plaintiff kicked the dog in an effort to resist the unprovoked attack; and let the dog attack Plaintiff for at least two minutes.

Priester, 208 F.3d at 927. On those facts, we held that "no particularized

preexisting case law was necessary for it to be clearly established that what

Defendant Wheeler did violated Plaintiff's constitutional right to be free from the

excessive use of force," as "[n]o reasonable police officer could believe that this

force was permissible given these straightforward circumstances." Id.

16

The record demonstrates that the district court did not err in granting the defendants' cross motion for summary judgment on the excessive force claim. See Burton, 271 F.3d at 1276-77. Specifically, the record demonstrates that Yoos's use of canine force was objectively reasonable. See Graham, 490 U.S. at 395, 109 S.Ct. at 1871. From Sinnot's and Yoos's police reports, it appears that the defendants had reason to believe that the serious felony crime of burglary had recently occurred, as Sinnot stated that she found a freshly broken window upon arriving at the building and Yoos stated that his police dog alerted to fresh human scent in the building.

Also, from Sinnot's and Yoos's police reports, it appears that the defendants had reason to believe that the perpetrator was in the area of vegetation near the building, as Sinnot stated that she heard movement there and Sinnot and Yoos stated that they both saw an empty cash drawer in that area. Furthermore, from Sinnot's police report and the defendants' affidavits, it appears that the defendants had reason to believe that Grimes may pose a risk to their safety, as Sinnot stated that the vegetation was thick and the visibility low, such that they could not see who was in the bushes and whether he or she was armed, and the defendants each attested that they were concerned for their safety.

Finally, from Sinnot's police report, it appears that the defendants had

reason to believe that Grimes was trying to flee, as Sinnot stated that she could hear movement in the vegetation and that a chain link fence nearby was bent, suggesting that someone had bent it in an effort to clear it. Therefore, the record demonstrates that the defendants could have reasonably believed that force was necessary because an unknown number of felony suspects were in a concealed area and were attempting to evade police apprehension. See Graham, 490 U.S. at 396, 109 S.Ct. at 1872.

The fact that Yoos failed to warn Grimes of his and the police dog's presence does not alter the conclusion that the use of force was objectively reasonable. The city's policy manual and standards provided an exception to the warning requirement for situations in which warning might "allow the offender to escape." Yoos stated in his police report that he did not give a warning because he did not know whether the suspect was on the inside or outside of the fence and did not want the suspect to flee. Also, the alleged statements made by the defendants during the incident do not alter the conclusion that the use of force was objectively reasonable, as the defendants' subjective intentions or thoughts are irrelevant to the inquiry. See Graham, 490 U.S. at 396-97, 109 S.Ct. at 1872. Thus, pursuant to the record, Yoos did not use excessive canine force, and Secord and Sinnot did not unlawfully fail to intervene to stop the use of excessive force. See Graham, 490

18

U.S. at 388, 394-95, 109 S.Ct. at 1867-68, 1871; Priester, 208 F.3d at 924-25.[2]

Even assuming that the defendants' conduct was not objectively reasonable, such that it arguably violated Grimes's constitutional right against the use of excessive force, the defendants were protected from liability by the doctrine of qualified immunity. See Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. As stated above, the parties do not dispute that the defendants were acting in their discretionary authority. However, Grimes's constitutional right against the type of force used in the situation in question was not clearly established. See Vinyard, 311 F.3d at 1346. Grimes has not provided, and independent research does not reveal, a statute or constitutional provision or specific case barring the type of force used in the situation in question. See id. at 1350-52.

Also, it does not appear that the defendants' conduct was so egregious as to be clearly impermissible. See Vinyard, 311 F.3d at 1346. Although we addressed allegedly excessive canine force in Priester, this case does not provide a case on point or reason to find that the defendants' conduct here was sufficiently severe. See Priester, 208 F.3d at 927. The facts of that case are distinguishable from the

---

[2] The defendants also submitted photographs of the scene. On appeal, Grimes also argues that the photographs were outdated, such that the district court erred in relying on them. However, the fact that the photographs submitted by the defendants may have been outdated does not alter the conclusion that the use of force was objectively reasonable, as the aforementioned analysis of the reasonableness of the defendants' conduct rests in no part on these photographs.

instant case, as the plaintiff in that case immediately surrendered to the police officers and was attacked by the police dog for approximately two minutes, while Grimes was concealed in bushes and, therefore, not instructed to surrender, and Yoos stated that he ordered the police dog to release Grimes immediately.  See id. Thus, because they did not violate a clearly established constitutional right in using canine force to apprehend Grimes, the defendants are protected by the doctrine of qualified immunity.  See Harlow, 457 U.S. at 818, 102 S.Ct. at 2738.  Accordingly, we affirm the district court's grant of summary judgment as to this matter.

**REMANDED IN PART, AFFIRMED IN PART.**