[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10169
_____

D.C. Docket No. 8:11-cv-00164-JDW-TGW

DANIEL K. TEAL,

Plaintiff-Appellee,

versus

JAMES CAMPBELL, Corporal, FRANK
FELICETTA, Corporal, et al.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 4, 2015)

Before MARTIN and ANDERSON, Circuit Judges, and MORENO,* District
Judge.

_____

*Honorable Federico A. Moreno, United States District Judge for the Southern District of
Florida, sitting by designation.

PER CURIAM:

We have had the benefit of oral argument in this case.  We have also carefully considered the briefs of the parties, the order of the district court, and the summary judgment record in this case.  The background facts are as follows.  Plaintiff Teal brought this 42 U.S.C. §1983 suit against Deputies Campbell, Felicetta, Riba, Carter, Schein, and Hughey of the Pinellas County Sheriff's Office, claiming that Defendants used excessive force in arresting him.  Teal ran a sobriety checkpoint and led the Defendants on a high-speed chase.  Teal ignored the pursuing marked Sherriffs cars with lights and sirens activated, driving at times 85-90 miles per hour.  Eventually, Teal lost control of his pick-up truck and crashed into bushes at a motel.  One of the officers approached while Teal was still in the truck, pointed his handgun at Teal, and ordered him to get out and put up his hands.  However, Teal ignored the officer's commands, exited the vehicle and ran away, with the officers giving chase on foot.  Teal then ran into a parked car at the motel and fell to the ground.

Although the foregoing facts are undisputed, the parties disagree about what happened in the few seconds following Teal's fall to the ground.  The several officers testified that Teal continued to ignore their commands to stay on the ground, stop resisting, and put his hands behind his back to permit handcuffing.  In his verified complaint and brief on appeal, Teal asserts that the officers used

2

excessive force, beating and kicking him and tasering him three to four times while he was on the ground in pain.

In the district court, the officers sought qualified immunity, and demonstrated that they were exercising discretionary duties when the alleged abuse occurred. The district court denied qualified immunity. The officers then prosecuted the instant interlocutory appeal.

The Supreme Court in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865 (1989), together with its progeny in this Circuit – e.g., Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002), and Lee v. Ferraro, 284 F.3d 1188 (11th Cir. 2002) – has recognized that law enforcement's right to make an arrest necessarily carries with it the right to use some degree of physical coercion and has set forth the appropriate inquiry. Courts are instructed to balance the necessity of using some force against the arrestee's constitutional rights. In doing so, courts should evaluate a number of factors, including (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; (3) whether he is actively resisting arrest or attempting to evade arrest by flight; (4) the need for the application of force; (5) the relationship between the need and amount of force used; and (6) the extent of the injury inflicted. See Lee v. Ferraro, 284 F.3d at 1197-98. Thus, when qualified immunity for the officers is at issue, as in this case, "qualified immunity can be overcome [] only if the

3

standards set forth in Graham and our own case law inevitably lead every reasonable officer in [the defendant's] position to conclude the force was unlawful." Id. at 1199 (internal quotations omitted).  A plaintiff can overcome qualified immunity and demonstrate a violation of a clearly established constitutional right by pointing to a materially similar case decided by the Supreme Court, this Circuit or the relevant state supreme court, or by demonstrating that the case fits within that exceptional conduct which so obviously violates the Constitution that prior case law is unnecessary.

Teal has not cited a case which we consider to be materially similar to the instant case, nor has our research uncovered one.  Thus, the issue in this case is whether the conduct of the officers here falls within that exceptional conduct which so obviously violates the Constitution that prior case law is unnecessary. We have described this "narrow exception" as including cases where plaintiff has shown "that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent  to the official, notwithstanding the lack of case law." Lee v. Ferraro, 284 F.3d 1188, 1199 (11th Cir. 2002).  We have also described the narrow exception as involving an "official's conduct [that] was so far beyond the hazy border between excessive and acceptable force that [the official] had to know he

4

was violating the Constitution even without case law on point." Willingham v. Loughnan, 321 F.3d 1299, 1303 (11th Cir. 2003).

Crucial issues in this case involve the Graham factors of whether Teal was resisting arrest or posed a threat to the safety of the officers or others. While Plaintiff argues that he was no longer resisting arrest at the moment the force was used, that misses an important point. In qualified immunity cases, we ask not whether the suspect intended to surrender or abandon his resistance. Rather, we ask whether a reasonable officer on the scene would have perceived that plaintiff was no longer resisting and no longer a threat. In the circumstances here, we cannot conclude that it would have been readily apparent to a reasonable officer that Teal had forsaken his aggressive resistance. Teal had led the officers on a dangerous, high-speed chase, and then when Teal lost control of his vehicle and crashed into some bushes, he exited the vehicle, ignored the officer approaching him with pistol drawn, ignored the officer's commands to stop and hold up his hands, and led the officers on a frantic chase on foot.

While it is true that several taserings were administered while Plaintiff was on the ground, we are not persuaded that a reasonable officer would have known that plaintiff was no longer resisting arrest or no longer a threat. The several officers testified clearly that Plaintiff was still resisting and that he was ignoring their commands to show his hands so they could handcuff him. In response, Teal's

5

verified complaint alleges only that he "was on the ground hurt from hitting his leg on a fender of a car." There is no verified allegation and no evidence at all that Plaintiff signaled in any way to the officers that he had surrendered and that he was no longer resisting and no longer a threat. [1]

_____

[1]    We believe that the difference between our position, and that of our respected colleague in dissent (and the well-regarded district judge below), is primarily a disagreement about what reasonable officers would perceive from a given set of facts. We believe that the reasonable inferences from this record, viewed in the light most favorable to Teal, reveal that Teal's body was on the ground and not moving at the moment, with his hands visible to the officers. We do not believe that there is a reasonable inference that Teal had been thus immobile more than a minimal amount of time. We focus of course – not on whether Teal was actually stunned nor on whether he was actually incapable of movement – but rather on what the perception was to reasonable officers under all the circumstances known to them. In light of the defendant officers' having witnessed (and intensely experienced) Teal's aggressive resistance to arrest up to that moment, we do not believe that reasonable officers would have perceived that Teal's temporarily immobile body on the ground signaled an abandonment of his resistance. We do not believe that reasonable officers in the shoes of these defendants would have perceived that Teal had surrendered. In this qualified immunity context, we cannot conclude that the conduct of the officers here was "so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution." Willingham, 321 F.3d at 1303. See also Lee v. Ferraro, 284 F.3d at 1199 ("Under this test, the law is clearly established, and qualified immunity can be overcome, only if the standard set forth in Graham and our own case law inevitably lead every reasonable officer in [the defendants'] position to conclude the force was unlawful.") (internal quotations omitted).

Although we do have discretion to simply "take as given, the facts that the district court assumed," as the dissent appropriately notes, we also have discretion not to do so. We do not do so in this case for two reasons. First, we respectfully believe that the district court erred in concluding that every reasonable officer in the shoes of these defendants would have perceived that Teal had surrendered. See D.C. Order at 8 (holding that Teal "was no longer actively resisting or attempting to flee at the precise moment the force was administered."). We believe that the district court either failed to focus properly on the perspective of a reasonable officer, or reached an erroneous conclusion thereon on the basis of the facts known to the officers. Second, Teal's briefs on appeal did not ask us to simply take as given the facts assumed by the district court as we are authorized to do by Johnson v. Jones, 515 U.S. 304, 115 S.Ct. 2151 (1995).

In the tense seconds following Teal's fall to the ground, and with no indication from Teal that he was abandoning his aggressive and dangerous resistance to arrest, we cannot conclude that it would have been readily apparent to the officers that their use of tasers would violate the Constitution.  And, while Teal's verified allegations assert, in conclusory fashion, that he was "stomped and kicked numerous times" and that the tasers caused "massive heart troubles," there is no concrete evidence in this summary judgment record of any serious injury other than the necessity to have one taser prong medically removed from Teal's lip.

Applying the Graham factors in this case, it is clear that this case involved a severe, serious crime. Teal had led the officers on a dangerous high-speed chase followed by dangerous flight on foot despite the approaching officer pointing his handgun at and ordering Teal to stop and hold up his hands.  Thus, this factor points strongly in favor of the Defendants.  With respect to the second and third Graham factors, as noted above, in the tense seconds while Teal was on the ground following his aggressive and dangerous flight from the officers and in the absence of any indication from Teal that he was surrendering, we cannot conclude that a reasonable officer under these circumstances would perceive Teal as no longer resisting or no longer a threat.  These factors too favor the Defendants.

7

With respect to the last three <u>Graham</u> factors – involving the extent of force applied, the relationship between the need and amount of force, and the extent of injury – we cannot conclude that these weigh strongly in favor of Teal, if at all.  As noted above, Teal's proffered evidence includes only conclusory allegations in this regard, and those allegations are not supported by any concrete evidence, e.g., with respect to the amount of force applied or the extent of injuries inflicted on Teal.

For the foregoing reasons, we are not persuaded that every reasonable officer in the shoes of these Defendants would conclude that the force used was unlawful.  Accordingly, the judgment of the district court denying these Defendants the protection of qualified immunity is

REVERSED.

MARTIN, Circuit Judge, dissenting:

In this excessive-force case, the Defendants moved for summary judgment, arguing they are entitled to qualified immunity. As is common in these cases, the Plaintiff, Daniel Teal, and the Defendants paint starkly different pictures of what happened between them. The District Court recognized that, on summary judgment, it must "accept the Plaintiff['s] version of the facts and draw all justifiable inferences in [his] favor." Fils v. City of Aventura, 647 F.3d 1272, 1287 (11th Cir. 2011). Following this principle, the District Court accepted the version of the facts described by Mr. Teal. In reversing, the majority rejects Mr. Teal's version of the facts. I respectfully dissent.

I will not restate the facts in detail. I agree with the majority's statement, except on the most relevant point. That point—the key question on which this appeal turns—is whether, after he fell to the ground, Mr. Teal signaled to the Defendants that he had surrendered, stopped fleeing, stopped resisting, and was no longer a threat. If he did, the majority seems to agree that the District Court was right to deny qualified immunity. See Panel Op. at 5–6.

The Defendants testified that Mr. Teal gave no such sign. They said he continued to resist after he fell to the ground in these ways: trying to stand up; struggling while they attempted to handcuff him; and refusing their commands to put his hands behind his back and instead lying on top of his arms. The majority

9

insists Mr. Teal has adduced no evidence rebutting this testimony.  It says it can find "no evidence at all that [Mr. Teal] signaled in any way to the officers that he had surrendered and that he was no longer resisting and no longer a threat."  Id.

But the evidence to that effect is, well, evident.  Mr. Teal testified that after he fell to the ground, he was "flat on [his] stomach," "was stunned," "couldn't move," and could not get up.  As for his hands (and, literally, by extension, his arms), Mr. Teal testified that while he was lying flat on his stomach, his hands were "behind [his] back on his side," and were "never" "underneath [his] chest." Trial Tr. vol. 2, 239–40, Feb. 7, 2008.

Mr. Teal's testimony and that of the Defendants are in direct conflict.  The Defendants say he tried to stand up; Mr. Teal says he could not get up.  The Defendants say he struggled and resisted their efforts to handcuff him; Mr. Teal says he was stunned and couldn't move.  The Defendants say he refused their commands to put his hands behind his back; Mr. Teal says he was lying on his stomach and his hands were behind his back and never underneath him.

Given this conflict, at the summary judgment stage of the proceedings our precedent compels us to "draw all justifiable inferences in [Mr. Teal's] favor."  See Fils, 647 F.3d at 1287.  Specifically, we must accept Mr. Teal's story—that he had surrendered; he had stopped fleeing; he had stopped resisting; he was no longer a threat; and his actions (or inactions, as the case may be) would have conveyed as

10

much to the Defendants or any other reasonable police officer.  Mr. Teal's statement that he "was stunned," "couldn't move," and could not get up seems to me to demand an inference that he had surrendered and was no longer trying to flee.  Accepting his version of the facts, the inference must be that Mr. Teal was no longer a threat.  If a person is on the ground, stunned, and can neither move nor get up, how can he flee?  How can he pose a threat?  How can he do anything but surrender?  Likewise, if he was lying "flat on [his] stomach," and his hands were "behind [his] back" and "never" "underneath [his] chest," does that not demand an inference that he complied with the Defendants' commands to place his hands behind his back?

This is a quintessential factual dispute.  Plaintiff says the struggle happened one way; the Defendants say it happened another way.  The District Court properly recognized that we are not in the business of settling disputes like this on summary judgment.  As the Supreme Court has said time and again: "it is clear . . . that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986) (emphasis added).  In reversing, the majority faults the District Court for refusing to do what the Supreme Court has forbidden—weigh evidence on summary judgment.

I recognize that when faced with the choice, most people are inclined to

believe the story told by several police officers rather than by a felon who fled a DUI checkpoint, led the police on a high-speed chase, careened off the road, and continued to flee on foot. But countless qualified-immunity cases pit upstanding state actors against convicts. And just as in any other case, on summary judgment we must accept the plaintiff's facts and draw reasonable inferences in his favor. See Fils, 647 F.3d at 1287.

Of course, this does not mean that Mr. Teal's story is right. See Cottrell v. Caldwell, 85 F.3d 1480, 1486 (11th Cir. 1996) ("[W]hat [are] considered to be the 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial . . . ."). Neither does it mean that Mr. Teal will ultimately succeed at trial. He still must persuade a fact-finder to believe his story. And if he cannot, the police officers may then be entitled to qualified immunity. See Kelly v. Curtis, 21 F.3d 1544, 1546 (11th Cir. 1994) ("[A] defendant who does not win summary judgment on qualified immunity grounds may yet prevail on those grounds at or after trial on a motion for a judgment as a matter of law."). But trial, not summary judgment, is the time to decide whose story is right. The majority may be betting on the favored horse, but we must let them run the race before crowning the winner.

It deserves mention that there is an even simpler way to correctly decide this case. Even if the majority disagrees with the way I have interpreted Mr. Teal's

facts or with the inferences I have drawn in his favor, we need not conduct our own review of the facts. The Supreme Court has authorized us to simply "take, as given, the facts that the district court assumed when it denied summary judgment." Johnson v. Jones, 515 U.S. 304, 319, 115 S. Ct. 2151, 2159 (1995). We may then analyze the legal issue (i.e., whether the Defendants are entitled to qualified immunity) based on the facts as the District Court saw them. See id.

Taking this route would be appropriate here. The District Court's order was laudably comprehensive. It identified but rejected the Defendants' facts. It then identified Mr. Teal's facts and explained that it was required to accept the latter as true and draw inferences in Mr. Teal's favor. At each step, the District Court's findings were amply supported by the record. Indeed, the Defendants failed in their briefing on appeal to explain why the District Court's findings of fact were unsupported. The Defendants simply stated their own version of the facts, without ever confronting the District Court's findings or arguing they were incorrect.

Despite our clear authority to accept the facts found by the District Court, id., and our usual practice of "affirm[ing] a district court's decision . . . for any reason supported by the record," Watkins v. City of Montgomery, Ala., 775 F.3d 1280, 1289 n.5 (11th Cir. 2014), the majority ignores Johnson and disregards facts favorable to Mr. Teal, all with the result of reversing the District Court's denial of qualified immunity. The District Judge did careful work here, and followed the

demands of our precedent.  He should be affirmed.

I therefore respectfully dissent.