PER CURIAM:
We have had the benefit of oral argument in this case. We have also carefully considered the briefs of the parties, the order of the district court, and the summary judgment record in this case. The background facts are as follows. Plaintiff Teal brought this 42 U.S.C. § 1983 suit against Deputies , Campbell, Felicetta, Riba, Carter, Schein, and Hughey of the *821 Pinellas County Sheriffs Office, claiming that Defendants used excessive force in arresting him. Teal ran a sobriety checkpoint and led the Defendants on a high-speed chase. Teal ignored the pursuing marked Sherriffs cars with lights and sirens activated, driving at times 85-90 miles per hour. Eventually, Teal lost control of his pick-up truck and crashed into bushes at a motel. One of the officers approached while Teal was still in the truck, pointed his handgun at Teal, and ordered him to get out and put up his hands. However, Teal ignored the officer’s commands, exited the vehicle and ran away, with the officers giving chase on foot. Teal then ran into a parked car at the motel and fell to the ground.
Although the foregoing facts are undisputed, the parties disagree about what happened in the few seconds following Teal’s fall to the ground. The several officers testified that Teal continued to ignore their commands to stay on the ground, stop resisting, and put his hands behind his back to permit handcuffing. In his verified complaint and brief on appeal, Teal asserts that the officers used excessive force, beating and kicking him and tasering him three to four times while he was on the ground in pain.
In the district court, the officers sought qualified immunity, and demonstrated that they were exercising discretionary duties when the alleged abuse occurred. The district court denied qualified immunity. The officers then prosecuted the instant interlocutory appeal.
The Supreme Court in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), together with its progeny in this Circuit — e.g., Vinyard v. Wilson, 311 F.3d 1340 (11th Cir.2002), and Lee v. Ferraro, 284 F.3d 1188 (11th Cir.2002)— has recognized that law enforcement’s right to make an arrest necessarily carries with it the right to use some degree of physical coercion and has set forth the appropriate inquiry. Courts are instructed to balance the necessity of using some force against the arrestee’s constitutional rights. In doing so, courts should evaluate a number of factors, including (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; (3) whether he is actively resisting arrest or attempting to evade arrest by flight; (4) the need for the application of force; (5) the relationship between the need and amount of force used; and (6) the extent of the injury inflicted. See Lee v. Ferraro, 284 F.3d at 1197-98. Thus, when qualified immunity for the officers is at issue, as in this case, “qualified immunity can be overcome [ ] only if the standards set forth in Graham and our own case law inevitably lead every reasonable officer in [the defendant’s] position to conclude the force was unlawful.” Id. at 1199 (internal quotations omitted). A plaintiff can overcome qualified immunity and demonstrate a violation of a clearly established constitutional right by pointing to a materially similar case decided by the Supreme Court, this Circuit or the relevant state supreme court, or by demonstrating that the case fits within that exceptional conduct which so obviously violates the Constitution that prior case law is unnecessary.
Teal has not cited a case which we consider to be materially similar to the instant case, nor has our research uncovered one. Thus, the issue in this case is whether the conduct of the officers here falls within that exceptional conduct which so obviously violates the Constitution that prior case law is unnecessary. We have described this “narrow exception” as including cases where plaintiff has shown “that the official’s conduct lies so obviously at the very core of what the Fourth Amendment pro *822 hibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law.” Lee v. Ferraro, 284 F.3d 1188, 1199 (11th Cir.2002). We have also described the narrow exception as involving an “official’s conduct [that] was so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without case law on point.” Willingham v. Loughnan, 321 F.3d 1299, 1303 (11th Cir.2003).
Crucial issues in this case involve the. Graham factors of whether Teal was resisting arrest or posed a threat to the safety of the officers or others. While Plaintiff argues that he was no longer resisting arrest at the moment the force was used, that misses an important point. In qualified immunity cases, we ask not whether the suspect intended to surrender or abandon his resistance. Rather, we ask whether a reasonable officer on the scene would have perceived that plaintiff was no longer resisting and no longer, a threat. In the circumstances here, we cannot conclude that it would have been readily apparent to a reasonable officer that Teal had forsaken his aggressive resistance. Teal had led the officers on a dangerous, high-speed chase, and then when Teal lost control of his vehicle and crashed into some bushes, he exited the vehicle, ignored the officer approaching him with pistol drawn, ignored the officer’s commands to stop and hold up his hands, and led the officers on a frantic chase on foot.
While it is true that several taserings were administered while Plaintiff was on the ground, we are not persuaded that a reasonable officer would have known that plaintiff was no longer resisting arrest or no longer a threat. The several officers testified clearly that Plaintiff was still resisting and that he was ignoring their commands to show his hands so they could handcuff him. In response, Teal’s verified complaint alleges only that he “was on the ground hurt from hitting his leg on a fender of a car.” There is no verified allegation and no evidence at all that Plaintiff signaled in any way to the officers that he had surrendered and that he was no longer resisting and no longer a threat.[1]
*823 In the tense seconds following Teal’s fall to the ground, and with no indication from Teal that he was abandoning his aggressive and dangerous resistance to arrest, we cannot conclude that it would have been readily apparent to the officers that their use of tasers would violate the Constitution. And, while Teal’s verified allegations assert, in conelusory fashion, that he was “stomped and kicked numerous times” and that the tasers caused “massive heart troubles,” there is no concrete evidence in this summary judgment record of any serious injury other than the necessity to have one taser prong medically removed from Teal’s lip.
Applying the Graham factors in this case, it is clear that this ease involved a severe, serious crime. Teal had led the officers on a dangerous high-speed chase followed by dangerous flight on foot despite the approaching officer pointing his handgun at and ordering Teal to stop and hold up his hands. Thus, this factor points strongly in favor of the Defendants. With respect to the second and third Graham factors, as noted above, in the tense seconds while Teal was on the ground following his aggressive and dangerous flight from the officers and in the absence of any indication from Teal that he was surrendering, we cannot conclude that a reasonable officer under these circumstances would perceive Teal as no longer resisting or no longer a threat. These factors too favor the Defendants.
With respect to the last three Graham factors — involving the extent of force applied, the relationship between the need and amount of force, and the extent of injury — we cannot conclude that these weigh strongly in favor of Teal, if at all. As noted above, Teal’s proffered evidence includes only conelusory allegations in this regard, and those allegations are not supported by any concrete evidence, e.g., with respect to the amount of force applied or the extent of injuries inflicted on Teal.
For the foregoing reasons, we are not persuaded that every reasonable officer in the shoes of these Defendants would conclude that the force used was unlawful. Accordingly, the judgment of the district court denying these Defendants the protection of qualified immunity is
REVERSED.

. We believe that the difference between our position, and that of our respected colleague in dissent (and the well-regarded district judge below), is primarily a disagreement about what reasonable officers would perceive from a given set of facts. We believe that the reasonable inferences from this record, viewed in the light most favorable to Teal, reveal that Teal’s body was on the ground and not moving at the moment, with his hands visible to the officers. We do not believe that there is a reasonable inference that Teal had been thus immobile more than a minimal amount of time. We focus of course — not on whether Teal was actually stunned nor on whether he was actually incapable of movement — but rather on what the perception was to reasonable officers under all the circumstances known to them. In light of the defendant officers’ having witnessed (and intensely experienced) Teal’s aggressive resistance to arrest up to that moment, we do not believe that reasonable officers would have perceived that Teal’s temporarily immobile body on the ground signaled an abandonment of his resistance. We do not believe that reasonable officers in the shoes of these defendants would have perceived that Teal had surrendered. In this qualified immunity context, we cannot conclude that the conduct of the officers here was "so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution.” Willingham, 321 F.3d at 1303. See also Lee v. Ferraro, 284 F.3d at 1199 ("Under this test, the law is clearly established, and qualified immunity can be overcome, only if the standard set forth in Graham and our own case law inevitably lead every reasonable officer in [the defendants’] position to conclude the force was unlawful.”) (internal quotations omitted).
Although we do have discretion to simply "take as given, the facts that the district court assumed,” as the dissent appropriately notes, *823 we also have discretion not to do so. We do not do so in this case for two reasons. First, we respectfully believe that the district court erred in concluding that every reasonable officer in the shoes of these defendants would have perceived that Teal had surrendered. See D.C. Order at 8 (holding that Teal “was no longer actively resisting or attempting to flee at the precise moment the force was administered.”). We believe that the district court either failed to focus properly on the perspective of a reasonable officer, or reached an erroneous conclusion thereon on the basis of the facts known to the officers. Second, Teal’s briefs on appeal did not ask us to simply take as given the facts assumed by the district court as we are authorized to do by Johnson v. Jones, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).